# CHARLESTON.

McCRUM *et al* v. LEE *et al.*

OFFUTT *r.* McCRUM *et al.*

Submitted June 12, 1893 - Decided December 6, 1893.

1. TRUSTS AND TRUSTEES—INJUNCTION—PLEADING—AMENDMENT.
   A trust-creditor and the trustee to whom the property had been turned over by the trust-debtor to sell, file a bill of injunction to restrain a third party from wrongfully removing the trust-property out of the state, but do not pray for general relief. *Held:*

If the plaintiffs desire any relief proper to be given in the case as made, other than that specifically prayed for, the bill must contain a prayer for general relief, but such a general prayer may be added by amendment or amended bill.

2. Trusts and Trustees—Pleading—Amendments.

In such case plaintiffs may, by amended bill or supplemental, as may be proper, allege new facts, and make new parties defendant, showing the necessity for taking accounts, and for the aid of the court in safely and properly executing his duties as trustee, adding a prayer for the taking of such accounts, and for the aid of the court in administering the trust. *Held*, such amendments are not improper, nor are they within the meaning of the rule which forbids the introduction of such new matter as constitutes in substance a new bill.

3. Trusts and Trustees.

Against a party defendant, who has wrongfully removed out of the state all or a part of the trust-property, the court may make such presumptions and draw such inferences, as the case admits of, and treat such defendant as one who shall not profit by such wrong.

A. B. Parsons for appellant cited 3 W. Va. 154; Rob. Prac. 259, 268; 1 Call. 575; 7 Gratt. 302; 11 Gratt. 305; 10 Lee 114; 2 Rob. Pr. 141, 241; 1 Bar. Ch'y Pr. 152, 154; 1 Lom. Ex. 555.

W. B. Maxwell for appellee, McCrum:

I.—*Injunction to prevent removal of property.*—Code, c. 133, s. 1 and 8; Hill. Inj. 341, §§ 6 to 11, inclusive.

II.—*Amendment of bill.*—1 Bar. Chy. Prac. 225; 26 Gratt. 216-7; 33 Gratt. 548; 30 W. Va. 779.

III.—*Authorities quoted on amendment of bill.*—1 Bar. Chy. Prac. 324; 26 Gratt. 217.

IV.—*Marshalling assets—Order of reference.*—10 W. Va. 207, 8 p't of syll.; 25 W. Va. 242, 8 p't of syll.

V.—*Equity of redemption.*—24 W. Va. 590; 1 Jones Mort. § 878; 2 Jones Mort. § 1609.

VI.—*If not a party to suit not bound.*—1 Black Judg. § 209.

VII.—*Presumed to be a gift to husband by wife.*—32 W. Va. 452-3; 32 W. Va. 203.

VIII.—*Liability of married woman on note signed by her.*—20 W. Va. 584.

IX.—*Bill does not charge irreparable loss, and same not proven.*—35 W. Va. 462.

X.—*Sale of personal property not enjoined except, &c.*—4 W. Va. 194; 11 W. Va. 238; 24 W. Va. 615; 30 W. Va. 672.

XI.—*Incumbrance can not maintain injunction.*—2 W. Va. 494; 3 Gratt. 388; 27 W. Va. 570.

Holt, Judge:

These two cases are bills of injunction brought in Tucker county—the first by L. L. McCrum, trust-creditor, and Page R. McCrum, trustee, against J. W. Lee and others, trust-debtors, and D. E. Offutt, invoking the aid of the court in selling the property, and to enjoin its removal out of this state; the second was brought by Daniel E. Offutt, mortgagor of the same property by mortgage executed in Garrett county, state of Maryland, where he resided, against the McCrums, J. W. Lee and others, setting up his mortgage, with actual notice on the part of the McCrums when the deed of trust was given, and praying an injunction to restrain them from selling under the deed of trust. The same exhibits were filed, and the same depositions were taken to be used as evidence, in both cases, and such proceedings were had that the two causes came on to be heard together on July 10, 1890, when the court pronounced a decree whereby it continued the first-named cause for future consideration, and all questions thereby presented were reserved for the future order of the court; and the court then proceeding to ascertain the rights of the parties in the second cause adjudged them to be for defendants, and ordered and decreed that plaintiff Offutt's injunction be dissolved, and his bill dismissed, with costs.

Plaintiffs McCrums' original bill charged defendant Offutt and the Lees with wrongfully, unlawfully, and in the nighttime removing, and attempting to remove, the trust-property out of their possession and control, and out of the state, and beyond the jurisdiction of the court, praying specifically for an injunction against such removal, but not for general relief. The judge in vacation granted the injunction prayed for on February 2, 1887, and on the next day it was perfected by the giving of the bond required.

What is called the "Farquhar Steam Sawmill" was, as

events turned out, the only one in controversy, and it was all removed beyond the state, out of reach of the trustee, except the boiler, which his injunction was in time to stop within the state, and this he advertised to sell on February 21, 1887. On the first Monday in March, Offutt filed at rules his demurrer and answer, in which he set out his own claim to the mill in question by virtue of a Maryland mortgage to him from the defendant Lee, dated December 29, 1885, older in time and prior in equity to the West Virginia deed of trust and that the McCrums took their deed of trust with actual notice thereof. On December 22, 1888, the cause of McCrum was remanded to rules, with leave to amend, *etc.*, and mature the same for hearing; and the plaintiffs then filed an amended and supplemental bill, bringing in Emily J. Lee as a defendant, the wife of defendant J. W. Lee; as it appeared by Offutt's answer and the evidence thus far that she claimed the mill in question as her separate property, and was a joint maker of the note of eight hundred and fifty dollars secured by the deed of trust: also, charging that, since the filing of the original bill, defendant Offutt had made his whole mortgage debt on this mill by sale of other property, real and personal, in Maryland, made by virtue of other mortgages, leaving a surplus for which he should be compelled to account. In this bill they prayed for general relief, specifically for the relief prayed in the original bill, for sale of property under the deed of trust, or, if the separate property of Mrs. Lee, that in that event it might be sold as hers, to satisfy said debt of plaintiff L. L. McCrum against her.

At the hearing of the two causes together, on July 10, 1890, it was manifest from the pleadings and evidence that no safe and proper decree could be made in the cause without having certain facts ascertained, and accounts taken by a commissioner; and thereupon plaintiffs, by leave of the court, filed their second amended bill, the only material addition being a specific prayer for an account of liens on the mill, with their amounts and priorities, and at the same time, on December 1, 1890, the cause was referred to commissioner Adams, who was directed to ascertain and report as follows: The value of the mill at the time a part of it

was removed from Pendleton run into the state of Maryland; the liens thereon claimed by Offutt and by McCrum; the amounts, priorities, and to whom owing; also, any credit defendant Offutt should allow upon his mortgage on the mill in question by reason of the sales made by him of the property embraced therein, other than the mill in question, sold by him in Maryland; who was the purchaser of the property sold under such mortgages, or either of them, and the amount, if anything, yet due D. E. Offutt on such mortgages, and make and report such special statements as either party may require, or himself deem pertinent and proper; and Trustee Page R. McCrum was ordered to sell the boiler on six months credit, and report, *etc.*

On March 4, 1891, Page R. McCrum, trustee, reported the sale of the boiler in pursuance of the order, and the purchase thereof at the price of one hundred dollars. Commissioner Adams duly opened the taking of accounts, as directed, taking some additional testimony on some material questions of fact, the ascertainment of which was material and pertinent to the matters in hand. The commissioner completed his report, adding an alternative statement, at the request of Offutt's counsel, representing his view of what the report should have been. He retained it for the inspection and examination of counsel and parties.

Counsel for Offutt excepted to the report, pointing out three grounds of exceptions: (1) Offutt should have had a first lien on the mill, *etc*, for one thousand three hundred and thirty five dollars and forty five cents. (2) Offutt should have been credited with six hundred and sixty nine dollars and fifty cents, and two hundred and thirty eight dollars and seventy three cents, amount of debt and costs of the Pearre mortgage, as first lien on the real and personal property of the debtor, J. W. Lee. (3) A court of competent jurisdiction in Garrett county, state of Maryland, had made a settlement of the transactions of said Offutt as administrator of Peter Martin, deceased, and that there was found due Offutt, as such administrator, and unpaid to him on the mortgage on the mill property in controversy, as of 19th March, 1887, the sum of one thousand and

nine dollars and twenty six cents, and such sum, with interest brought down to date, as in alternate statement, was the correct amount due Offutt, and constituted a lien on the mill in controversy. Counsel for plaintiff's excepted to the alternate statement as shown to be incorrect by the statement made and adopted as correct by the commissioner.

With his report the commissioner returned the exceptions without any remarks thereon, and the cause came on to be finally heard on the 1st day of December, 1891, upon the papers formally read, depositions, report of sale of Trustee P. R. McCrum, and the report of Commissioner Adams, and exceptions and argument of counsel. The court proceeded to pronounce the decree complained of, stating specifically the grounds thereof, adopting in express words the necessary implications from the commissioner's report:

"The court is of the opinion, from the pleadings and proofs, that the defendant D. E. Offutt improperly and illegally removed the mill in controversy out of this state, and beyond the jurisdiction of the courts, in fraud of the rights of the plaintiffs by virtue of their deed of trust on the mill; that Offutt should be required to account for the value of the mill in controversy as it stood in this state just before its removal by him into the state of Maryland; and after crediting his debts with the net amount of the proceeds of sale of the property sold by him in the state of Maryland, (other than the proceeds of the sale of the mill) the said Offutt is entitled to have the residue of his debt, viz. three hundred and forty one dollars and eighty one cents, first paid out of the value of said mill, and plaintiff L. L. McCrum is entitled, by virtue of his deed of trust, to payment thereon of the residue of the value of the mill as it stood in this state before removal, and to recover of Offutt the residue of such value as found by the commissioner, viz. one thousand two hundred and seventy dollars, credited by the gross proceeds of the sale of the boiler, viz. one hundred dollars."

Then the court pronounced against D. E. Offutt, in favor of L. L. McCrum, a personal decree for seven hundred and

thirteen dollars and thirty four cents, thus ascertained by the commissioner, and as reduced by the court, with interest from August 11, 1891, with leave to sue out execution, *etc.* From this decree appellant, D. E. Offutt, obtained this appeal on January 5, 1892, and an appeal from the decree of July 10, 1890, dismissing the second-named cause, on January 30, 1892.

In the first-named cause, of *McCrum* v. *Lee et al.* (Offutt, appellant) the following grounds of error are assigned : (1) The court erred in not sustaining the demurrer to the original bill, amended bill, and second amended bill, and dismissing each of them ; (2) in entering the decree in this cause referring it to a commissioner ; (3) in not sustaining the defendants' exceptions to Commissioner Adams' report ; (4) in entering the final decree against D. E. Offutt.

In the second-named cause, of Daniel E. Offutt against L. .L McCrum and others, appellant, Offutt, assigned the following grounds of error : (1) The court erred in dissolving petitioner's injunction ; (2) in dismissing plaintiff' s bill at his costs ; (3) under the prayer of said bill, and the evidence, the court erred in not decreeing a sale of the boiler, and perpetuating petitioner's injunction.

The two cases were heard together by the court below, and have been submitted together in this Court on one set of briefs. The pleadings and proofs are the same down to the hearing and dismissal of the second-named cause, of *Offutt* v. *McCrum.* It might have been better to retain this latter cause until the final hearing of the first-named cause; but, in the view we take of the two, there was no substantial error in such dismissal, because McCrum's suit was pending against Offutt when this suit was brought ; and the relief sought could have been more fittingly and properly applied for in that suit, especially as that bill in the same court charged him with wrongfully removing the mill in controversy out of the state and beyond the jurisdiction of the court. He should at least have answered in that case first. He did answer in March, 1887, setting out his defence and claim fully—as fully as it is set out in his original bill of injunction ; and he could have prayed, or at any time moved, that the boiler or mill should be sold under

the direction of the court, and the proceeds paid in to the credit of the cause, to go ultimately to the one held to be entitled. The truth is, he had no ground for a cross-bill, because the facts, which he set up in his original bill as well as in his answer, constituted matter of defence tending to destroy and rebut, if true, plaintiff's cause of suit, and not showing any reason why the court should deprive him of a right or claim which he is conceded to have. In either view, section 35, c. 125, Code, gave him a remedy by answer, which was virtually saved to him to the end.

This bill of injunction was brought in D. E. Offutt's own name as plaintiff, and not in his name as administrator of Peter Martin, deceased. The claim on which he sued was a debt of one thousand two hundred and fifty dollars, evidenced by four promissory notes executed to him as such administrator, and secured by mortgage on the mill in dispute, which mill Martin died possessed of, and which came to Offutt to be administered; but Offutt sold the mill, and took the notes and mortgage. It is true that in a proper case these notes and mortgage, having this earmark, might be followed as assets in equity belonging to the estate, but in law the sale of the mill was a technical conversion, and the legal title to the notes and mortgage was in Offutt personally, and not in him as administrator, that addition being an earmark appropriately added to show that it was for property which had belonged to the intestate, and that the proceeds of sale were to be accounted for to his estate. In such case the suit was properly in his own name. It is true, under our law, if these notes had been executed to Peter Martin, and had come to plaintiff to be administered, then the suit would have been in his name as administrator, and his qualification as such in this state would have been a necessary requisite to the maintenance of the suit in that character, such inconvenience not having yet been remedied in this state by statute. In this case there is no error to the injury of appellant, and the decree dismissing his bill is affirmed.

The merits of the controversy—for it is virtually one— are to be found in the record of *McCrum* v. *Lee*, in which defendant Offutt is the only appellant. The first error as-

signed is that the court erred in overruling defendants' demurrer to original and amended bills. Nothing is more common, and nothing is better settled, than the right, and in a proper case the duty, of a trustee to invoke the aid and direction of a court of equity in the execution of his trust. It is true, chapter 72, § 6, of the Code, prescribes the proceedings, including sale under deeds of trust; but that does not forbid, but in a proper case impliedly requires, the trustee to go into a court of equity if he needs a guaranty of safety and protection for himself, and wishes to discharge properly the duties he may owe to the debtor as well as to the creditor. As, for example, where the deed of trust is of long standing, various payments have been made, and the true balance is not known, and can not be safely and readily ascertained; where there are successive liens or incumbrances, with balances unknown, sundry creditors, with shares or interests not defined, conflicting claims to the proceeds of sale—in these and like cases it is often eminently proper and promotive of justice that the trust or mortgage should be executed or foreclosed in a court of equity, where the accounts of all the parties in interest can be readily adjusted, the trust-fund, equitably distributed, and the trustee enabled to proceed safely as well as properly in the discharge of his duties. See Jones, Chat. Mort. § 779; *Hammers* v. *Dole*, 61 Ill. 307; *Dupuy* v. *Gibson*, 36 Ill. 197. This was but the common case of a trustee and trust-creditor, who filed a bill of injunction to enjoin and restrain the defendants from wrongfully removing the trust-property out of the state, as the law authorizes to be done (see Code, c. 133, s. 8) and thus hindering or preventing the due execution of the duties of the one as trustee, and the enforcement of the rights of the other as a trust-creditor.

It is true that if the plaintiffs desire any relief proper to be given in the case as made, other than the relief specifically prayed for, the bill must contain a prayer for general relief, but this can be added by amendment, as was afterwards properly done in this case. The plaintiffs may properly add new parties, as was done in this case, by making Emily J. Lee a defendant, as she was found to be a joint maker of one of the trust-debts, and may, by amended bill

or supplemental bill, as the case may require, allege new facts, as was done in this case, where plaintiffs in that way bring in the facts that D. E. Offutt, out of the proceeds of sale of certain real and personal estate, made by him by virtue of certain mortgages executed to him, had, since the original bill had been filed, received the full amounts of the debts due him, and had in his hands several hundred dollars surplus for which he should be compelled to account, and, if the mill should be held to be the separate estate of Emily J. Lee, that it might be sold to pay that note secured by the trust deed, which she owed as joint maker with her husband to plaintiff L. L. McCrum. This and the evidence showed the necessity of taking the accounts directed by the court, and the propriety, but perhaps not the necessity, of permitting plaintiffs to amend by praying that such accounts may be taken. All this was properly charged and done, in order that complete justice might be done to all parties, and the controversy ended. Such amendments were not improper. They did not make a new case, within the meaning of the rule which forbids the introduction of new matter constituting in substance a new bill, and the demurrers were properly overruled. With this view of the pleadings, the evidence in the cause made the taking of the accounts directed by the court eminently proper, and this disposes of appellant's second assignment of error.

The third and fourth assignments of error depend in large part upon the facts, and may be considered together. On the 29th day of September, 1885, defendant Daniel E. Offutt sold to defendant Emily J. Lee, or to her husband, defendant John W. Lee, in Garrett county, state of Maryland, a steam sawmill, fixtures, and appurtenances manufactured by Arthur B. Farquhar, belonging to the estate of his intestate, Peter Martin, and took a mortgage on the mill and certain real estate of Mrs. Lee to secure the payment of one thousand two hundred and fifty dollars, the unpaid purchase-money. It does not appear by this record that it was ever recorded in Garrett county, but it was recorded in Tucker county, W. Va., on January 26, 1887. On or about the 10th day of August, 1886, defendant John W. Lee removed this mill to Tucker county, W. Va., and set it up

for sawing at Pendleton run, near the town of Davis; defendant Offutt says without his consent, but the evidence clearly shows that it was at least with his knowledge.

On the 30th of November, 1886, John W. Lee, who was in possession claiming to be the owner, executed to plaintiff Page R. McCrum, trustee, a deed of trust on the mill to secure to plaintiff L. L. McCrum the payment of two notes executed to him—one for eight hundred and fifty dollars by John W. Lee, the husband, Emily J. Lee, the wife, and G. J. Lee, the son. The wife refused to join in the trust deed, but it was admitted to record December 1, 1886. When they took this deed of trust, L. L. McCrum, the creditor, had notice of Offutt's mortgage. On the land mentioned in this mortgage—one hundred and fifty acres and fifty acres situate in Garrett county—John W. Lee and Emily J., his wife, had executed to George A. Pearre, a mortgage on February 7, 1883, to secure the payment of six hundred and fifty dollars. This mortgage was admitted to record on the 16th of February, 1883, on this same land and certain personal property, but not including the mill. J. W. Lee and wife, on August 21, 1886, executed to Offutt another mortgage to secure the payment of seven hundred dollars due in twelve months. This was admitted to record on August 31, 1886.

About the —— of February, 1887, defendant Offutt hired a car of the West Virginia Central & Pittsburgh Railway Company, sent the car into the immediate vicinity of the mill late in the evening, and during that night defendant Lee and others, at the instance and direction of appellant, took down and loaded on the car all the mill except the boiler, and shipped it out of this state, into the state of Maryland, consigned to appellant. The mill, at that time, had been turned over to Trustee McCrum, and an inventory had been made for the purpose of selling under the trust-deed, the sale having been advertised. On the 19th March, 1887, in Garrett county, Md., and after he had filed his answer in plaintiffs' suit, defendant Offutt sold the mill, except the boiler, for three hundred dollars. The mill where it was set on Pendleton run, before it was dismantled and removed, was worth one thousand five hun-

dred dollars. Plaintiff McCrum would have given the amount of his trust debt, about one thousand four hundred dollars for it. It was known as "J. W. Lee's Mill," and if, in fact, it belonged or had belonged to his wife, Mrs. Emily J. Lee, she permitted her husband to remove it out of the state of Maryland, and set it up and run it in this state, in his own name and as his mill; his claim of ownership being recognized, as well as permitted, by her, his authority as owner in every way being apparently full and complete. She also, according to her testimony, participated in the removal of the mill out of this state.

The court, in its final decree of the 1st of December, 1891, applied to the case the principle that "no man shall take advantage of his own wrong," and the further rule of evidence contained therein, of presuming against the spoliator everything fairly deducible from his conduct in the transaction. He caused the mill, then in the control of the trustee for the purpose of enabling 'him to discharge his duty by selling it, to be taken down in the nighttime, and shipped of the state, and beyond the jurisdiction of the court, in fraud of the rights of the trust-creditor; and after plaintiffs' injunction forbidding the removal by him, and after his own injunction against the trustee forbidding the the sale of sawmill and fixtures, or any part thereof, he sold the mill himself in the state of Maryland for three hundred dollars at a cost and expense of sale of one hundred and two dollars and forty cents, leaving the net sum of one hundred and ninety seven dollars and sixty cents which he credited on his mortgage; thus leaving on his mortgage-debt, at that time, a balance of eight hundred and eleven dollars and sixty six cents and thus reducing what ought to have been the proceeds of sale—one thousand two hundred and seventy dollars or one thousand five hundred dollars—to three hundred dollars. The commissioner, out of abundant caution, adopted one thousand two hundred and seventy dollars and the court confirmed it; so that from the evidence, in the opinion of the commissioner and of the court, the loss entailed upon the trust-fund by his improper and illegal conduct amounted to nine hundred and seventy dollars. The court ascertained this

amount by a very moderate and cautious application of the presumption in *odium spoliatoris.* But, if let alone, this entailed no loss upon him, for he had in his mortgage other security, viz. the two hundred and nine acres of land in Garrett county, Md., more than sufficient to make him whole; but this would deprive the trust-creditor of his right to have the securities marshalled according to the well known rule which prevails in both states—that a court of equity, in a proper case, will compel a creditor having a lien on two parcels of property so to enforce it as not to injure the rights of him who has a lien on but one of them. *Aldrich* v. *Cooper*, 2 White and T. Lead. Cas. Eq. (4th Ed.) p't 1, p. 255; *Stephenson* v. *Taverners*, 9 Gratt. 398; *Alston* v. *Munford*, 1 Brock. 266; *Wiley* v. *Mayhood*, 10 W. Va. 207; *Bank* v. *Wilson*, 25 W. Va. 242; 2 Bart. Chy. Pr. § 278; 1 Bart. Chy. Pr. § 92.

The court seeing that, without prejudice to the rights of any innocent third party, it could safely undo the advantage which Offutt had tried to gain, which, if let alone, could not result in loss to him, but would result in loss to L. L. McCrum, the trust-creditor, to the extent of eight hundred and twenty eight dollars and nineteen cents at least, pronounced a decree against him, in favor of L. L. McCrum for that amount, with interest from August 11, 1891, till paid, with leave to sue out execution, *etc.* In this there is no error of which appellant has any right to complain.

As to Mrs. Emily J. Lee she does not appeal, and must, by this Court, be held not to have been the owner of the mill.

As to the method and process by which the court worked out and reached this result, that is immaterial, for the amount decreed might have been greater. It could not well have been less, and it leaves the trust-debt still unsatisfied. This principle of law applied by the court—that no man shall take advantage from and by reason of his own wrong—is manifestly reasonable and necessary, and none is of more frequent application in the various branches of the law. It lies at the foundation of the law of fraud and estoppel *in pais,* and comprehends other maxims of

practical importance; as, for example, the one that a right of action can not arise out of fraud, and that all fair inferences may be drawn *in odium spoliatoris*. See Co. Litt. 148b; Broom. Leg. Max. 279, and cases cited where it has been applied. As to the other maxim, *Armory* v. *Delamirie*, 1 Strange, 504, 1 Smith, Lead. Cas. 631; Best, Ev. § 411.

If appellant had left it within the power of the court, or, after his own suit was brought, had put it in the power of the court to sell the trust-property and administer the trust-fund, the court would have sold the mill, and out of the proceeds paid his first mortgage, but would have required him, after paying off the senior Pearre mortgage, of six hundred and fifty dollars on the Maryland land, and paying off his second mortgage of seven hundred dollars on the land and other personal property, which property sold for five hundred and forty six dollars and ninety five cents, and the land for one thousand two hundred dollars to pay over to the trust-creditor the amount received from this source over and above what was sufficient to satisfy in full his two mortgages on the land; and this, even according to the sale actually made, would have been but a trifle less than the sum decreed against him, taking the mill as worth one thousand two hundred and seventy dollars before he removed it, so that the leaving out of the Pearre mortgage by the commissioner in making up his account was only a different method of arriving at substantially the same result.

There is therefore no substantial error in the decrees complained of, and each is affirmed.