STATE DEPARTMENT OF PUBLIC ASSISTANCE

v.

WILLIAM J. PETTREY, *et al.*

(No. 10780)

Submitted April 10, 1956.     Decided May 22, 1956.

*John G. Fox,* Attorney General, *Harold A. Bangert, Jr.,* Assistant Attorney General, for relator.

*Ajax Smith,* for respondents.

GIVEN, JUDGE:

In this original proceeding in habeas corpus, the State Department of Public Assistance prays that a writ be issued directing that defendants, William J. Pettrey and Elva Pettrey, deliver custody of an infant, Charles Anthony Jackson, to petitioner.

The infant was born March 23, 1955, at a sanitarium in West Virginia. The mother, an unmarried woman, at the time of the birth, was over twenty one years of age and a citizen of another state. On April 5, 1955, the mother executed and acknowledged, as deeds are required to be acknowledged by the laws of this State, and delivered unto petitioner, an instrument purporting to relinquish the legal custody of the infant to petitioner. That instrument contained this provision: "Being unable to properly care for said child and after mature con-

sideration of his/her best interests, I hereby release and surrender all my parental rights to the custody and guardianship of said child into the State Department of Public Assistance, Division of Child Welfare of the State of West Virginia. I hereby give said Department the power to consent to his/her adoption." Pursuant to such instrument, custody of the infant was delivered to petitioner.

On January 18, 1955, previous to the relinquishment of the infant by the mother to the State Department of Public Assistance, petitioner, after usual investigations, entered into a written agreement, duly signed by defendants, whereby they agreed to accept custody "for foster care" of "only those children who are placed through the Department of Public Assistance". The agreement further provided that the defendants as such foster parents would not deliver custody of the infant to his "parents or anyone other than a representative of the Department of Public Assistance"; and that defendants would "give the Department of Public Assistance a reasonable amount of time (not less than two weeks) to make other plans for a child if we find it necessary to request removal of a child". The agreement contained these further pertinent covenants on the part of defendants: "11. To cooperate with the Department of Public Assistance in carrying out the Department's plan for a foster child, including the plan to return a child to his parents, to transfer him to another foster home or institution, etc. 12. To carry out all directions of the Department of Public Assistance for care of a foster child and to cooperate in maintaining approved standards of child care established by the Department. 13. That a child placed in our home will not be available to us for adoption."

Subsequently, on April 28, 1955, defendants executed a supplemental agreement with petitioner, designated a "placement contract with foster parents", whereby defendants were to accept custody and assume responsibility for the care of the infant in accordance with the

terms of the contract of January 18, 1955, for thirty dollars per month. The infant was then delivered to the care and custody of defendants by petitioner.

On July 18, 1955, one of defendants, Elva Pettrey, appeared with the infant at the office of the worker representing the Department of Public Assistance of Mercer County, accompanied by the mother of -the infant, and attempted to surrender custody of the infant to the State Department of Public Assistance. Custody was then refused by the worker. No notice had been given the Department of Public Assistance by defendants of any intention to surrender such custody, as required by the provisions of the contract of January 18, 1955, quoted above. Upon the refusal of the Department of Public Assistance worker to accept custody of the infant, the mother of the infant presented to the worker of the Department of Public Assistance an executed, signed, and acknowledged, instrument in this language: "I, Barbara Ann Jackson, of Bluefield, Virginia, a single woman over the age of twenty-one years, do hereby give my consent and permission for William Pettrey and Elva Pettrey, his wife, of Athens, West Virginia, to legally adopt my child, Charles Anthony Jackson, born on the 23rd day of March, 1955, who is now in the possession of the said William Pettrey and the said Elva Pettrey. And I further relinquish all my parental rights to said child unto them. WITNESS my hand this the 18th day of July, 1955. (Signed) Barbara Ann Jackson".

Subsequently, there was caused to be instituted in the Juvenile Court of Mercer County by a representative of the State Department of Public Assistance a proceeding for the purpose of having the infant adjudged to be a neglected child. That proceeding was dismissed without prejudice, on motion of the Prosecuting Attorney of Mercer County. Testimony adduced before the court in that proceeding, however, has been by stipulation made part of the record in the instant proceeding. Certain affidavits are by stipulation also made parts of the record in the instant proceeding.

Chapter 1 of the 1936 Acts of the Legislature, First Extraordinary Session, as amended, now Chapter 49 of Michie's 1955 Code, provided a "comprehensive system of child welfare throughout the state". By that Act the Legislature provided that "* * * The child welfare service of the State shall be administered by the state department of public assistance, the several county departments, and the licensing board herein provided in accordance with the provision of this chapter". Section 1 of Article 2 of that chapter provides that "It shall be the responsibility of the state department to provide care for neglected children who are committed to its care for custody or guardianship", and that "The state department may provide care for such children in family homes meeting required standards, at board or otherwise, through a licensed child welfare agency, or in a state institution providing care for dependent or neglected children". Provisions were made by the Act for the licensing of child welfare agencies, and Section 4 of Article 2, Chapter 49, provided that "No person, firm, corporation, association, organization, municipality or county may establish or maintain a child welfare agency unless licensed to do so by the state licensing board". Article 3 of Chapter 49 relates to "Private Institutions and Organizations" licensed as child welfare agencies, and Section 1 of that article reads: "Whenever a child welfare agency licensed to place children for adoption shall have been given the permanent care, custody and guardianship of any child and the rights of the parents of such child shall have been terminated by order of a court of competent jurisdiction or by a legally executed relinquishment of parental rights, the child welfare agency may consent to the adoption of such child pursuant to the statutes regulating adoption proceedings.

"The parents or the surviving parent of a child or the mother of an illegitimate child may relinquish the child to a child welfare agency licensed to place children for adoption by a written statement acknowledged as deeds are required to be acknowledged by law: Provided, however,

that if either of the parents of such child is under twenty-one years of age, such relinquishment shall not be valid unless and until the same shall have been approved in writing by a judge of a juvenile court of the county in which such parent may reside or in which such relinquishment is made: Provided, that an unwed mother may repudiate said relinquishment within one hundred and twenty days from the date of said relinquishment, by a written and acknowledged notice and statement to said child welfare agency to such effect."

Defendants contend that the instrument dated July 18, 1955, whereby the mother of the infant attempted to vest the right of custody of the infant in defendants, together with the oral statements of the mother made at the time of the delivery of such instrument to the Department of Public Assistance, was, in effect a repudiation of the prior relinquishment of such custody to petitioner and a substantial compliance with the pertinent provisions of Section 1 quoted above; that the petitioner had no authority to accept the custody of the infant for the reason that the mother was not a resident of West Virginia; and that the best interests of the infant require that the right of his custody be vested in defendants.

Petitioner contends that the provisions of Section 1 of Article 3 of Chapter 49, relating to repudiation of a relinquishment of the custody of an infant by an unwed mother, apply only where the relinquishment is made to a licensed child welfare agency and not where such relinquishment is direct to the Department of Public Assistance; and that if the statute applies to the facts in the instant case, the notice of the attempted repudiation of the relinquishment was not in form or effect required by the statute; and that the contract executed on January 18, 1955, and the subsequent "placement contract" executed on April 28, 1955, are valid and binding and require the delivery of the custody of the infant to petitioner.

We are of the opinion that the provisions of Section 1

of Article 3 of Chapter 49 relating to the repudiation of the relinquishment of the custody of an infant of an unwed mother apply only where the relinquishment was made to a licensed child welfare agency and not where such a relinquishment was made to the State Department of Public Assistance. Article 3 purports to deal only with "private child welfare agencies". The wording of the section applies only to "a child welfare agency licensed to place children * * *; and provides that the mother of an illegitimate child may relinquish the child to a child welfare agency licensed to place children * * *". Considering such language, along with the provisions authorizing the creation and licensing of private child welfare agencies, we think the conclusion stated is inescapable. This being true, the form or effect of the attempted repudiation of the relinquishment executed by the mother to the Department of Public Assistance becomes immaterial.

We find no merit in the contention of defendants to the effect that the Department of Public Assistance had no authority or right to accept custody of the infant for the reason that the mother was not a resident of West Virginia. The infant was within the geographical limits of the State and, according to the mother's own statements, was in need of care at the time of the acceptance of such custody by the Department of Public Assistance. While this Court has always guarded with great respect the natural right of parents to the custody of their infant children, it has consistently held that contracts made by parents regarding such custody must be respected, especially where the interests of the child were bettered. See *Fletcher* v. *Hickman,* 50 W. Va. 244, 40 S. E. 371; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212. We find no basis for any distinction, or for the application of a different rule of law, merely because the parent or parents happen to be nonresidents of West Virginia. The provision of Section 1 of Article 2 of Chapter 49, quoted above, that "It shall be the responsibility of the state

department to provide care for neglected children" does not restrict such "responsibility" to neglected children of residents of this State. Moreover, in the instant case no parent is claiming any right or custody. The claim of defendants is based only on the subsequent attempted relinquishment by the mother and the claim is in sharp conflict with provisions of the contract of January 18, 1955, executed by defendants to petitioner. See *In Re Sutton, an Infant,* 132 W. Va. 875, 53 S. E. 2d 839.

Much of the evidence before the Court relates to the nature of the home of defendants and the care which they are able to furnish the infant. From such evidence, it appears reasonably certain that defendants are capable of affording the infant a good home and sufficient care and are anxious to do so. It must be remembered, however, that defendants accepted custody of the infant as "foster parents" for temporary custody only, and they expressly contracted "to cooperate with the Department of Public Assistance in carrying out the Department's Plan" for the infant. There is no showing, of course, that the Department of Public Assistance can not or will not provide a home for the infant the equivalent of the one which would be furnished by defendants. While courts always look to the best interests of the child in such controversies, we know of no rule of law requiring the denial of legal custody of an infant to one legally entitled thereto merely because some other person might possibly furnish the child a better home or better care.

Being of the views indicated, a peremptory writ of habeas corpus *ad subjiciendum* must be awarded, as prayed for, directing that defendants, William J. Pettrey and Elva Pettrey, forthwith deliver custody of said infant, Charles Anthony Jackson, to the petitioner, the State Department of Public Assistance.

*Writ awarded.*