IN RE: THE ADOPTION OF ROSEMARY
BAILES JOHNSON, *An Infant*

(No. 11054)

Submitted September 8, 1959.    Decided October 6, 1959.

626

*Harold A. Bangert, Jr.*, for appellant.

*W. Del Roy Harner*, for appellees.

GIVEN, PRESIDENT:

This appeal from a decree of the Circuit Court of Tucker County involves the custody of an infant, born to an unwed mother. The appellees, Forest Isner and Edith Isner, husband and wife, on June 4, 1957, filed their petition in the circuit court praying that the infant, Rosemary Bailes Johnson, "be adopted unto them", and for general relief. The West Virginia State Department of Public Assistance filed an answer to the petition, and made a motion to quash the petition. An amended petition was filed, and an amended answer and motion to quash were filed to the amended petition, exhibiting a relinquishment of the child executed by the mother to the Department of Public Assistance, and also a "Foster Parents" agreement and a "placement contract", each executed by the Isners to the Department of Public Assistance. After a hearing, of which the mother had notice, the court refused to grant the adoption, "solely because there is no proper legal consent for said adoption", but granted custody and control of the child to the Isners "until the further order" of the court. From that order an appeal was granted on the petition of the Department of Public Assistance.

The infant was born October 13, 1956, the mother then

being over twenty one years of age. On October 20, 1956, the mother executed a relinquishment of the child, wherein she stated: "Being unable to properly care for said child and after mature consideration of her best interests, I hereby release and surrender all my parental rights to the custody and guardianship of said child into the State Department of Public Assistance, Division of Child Welfare of the State of West Virginia. I hereby give the said Department the power to consent to her adoption." The relinquishment was duly acknowledged by the mother.

By the foster parents agreement, dated October 18, 1956, the Isners agreed: "11. To cooperate with the Department of Public Assistance in carrying out the Department's plan for a foster child, including the plan to return a child to his parents, to transfer him to another foster home or institution, etc. 12. To carry out all directions of the Department of Public Assistance for care of a foster child and to cooperate in maintaining approved standards of child care established by the Department. 13. That a child placed in our home will not be available to us for adoption."

By the placement contract, bearing the same date as the foster parents agreement, the Department of Public Assistance agreed to pay the Isners the sum of forty dollars per month, and the child was to receive care and maintenance in their home. The child was then delivered to the Isners and remained in their home until the time of the entry of the decree complained of.

On petition of a child welfare worker of the West Virginia State Department of Public Assistance, filed in the Juvenile Court of Tucker County December 20, 1956, alleging that the infant was a dependent and neglected child, that court, on January 3, 1957, adjudged the child to be "a dependent and neglected child", and committed the child "to the permanent care, custody and guardianship of the said State Department of Public Assistance, Division of Child Welfare, and that the parental rights and responsibilities to and for said child are hereby

terminated". Subsequently, on June 20, 1957, in the adoption proceeding, the circuit court set aside the order of January 3, 1957. Numerous questions are raised concerning the action of the court in setting aside the order which, we think, need not be answered here, for the reason that whether the order be valid or invalid, it does not conflict with or affect any right acquired by the Department of Public Assistance under the duly executed relinquishment of the child by the mother. See *West Virginia State Department of Public Assistance* v. *Miller,* 142 W. Va. 855, 98 S. E. 2d 783.

On May 28, 1957, the County Court of Tucker County, by its Clerk, appointed Robert O. Shrout as guardian of the infant, who executed a writing purportedly consenting to the adoption of the child by the Isners, who alleged the consent in their petition for adoption.

The jurisdiction of this Court to hear and determine the questions arising on the appeal is challenged by appellees. The contention is made that no bill of exceptions was allowed, or timely applied for, and that, though the appeal was allowed by this Court on the last day of the period for which such an appeal is allowable, the action of this Court in issuing a writ of certiorari requiring the preparation and transmission of the record in aid of the appeal was, in effect, the substitution of a writ of certiorari for an appeal. We think there is no merit in the contention.

Though the writ of certiorari can not be allowed as a substitute for an appeal or writ of error, *Beasley* v. *Town of Beckley,* 28 W. Va. 81, it is a proper writ to bring to this Court the record, or part of the record, of a case pending in this Court. Code, 58-5-8. In the instant case it was made to appear to this Court, by petition for certiorari, that the clerk of the lower court had failed to prepare and transmit the record of the proceeding in which the decree complained of was entered, and to which decree this Court had granted an appeal and supersedeas, perhaps because no bill of exceptions had been

timely allowed incorporating the evidence adduced into the record. But no bill of exceptions was necessary. "* * * Any party interested may appeal to the supreme court of appeals from the decision of the circuit court in the matter, as in cases of appeals in chancery matters * * *", Code, 48-4-6, as amended. It may be pertinent to note that the same conclusions as to the controlling question would probably be required by the pleadings and exhibits, had the evidence adduced in the case not been brought before this Court.

The evidence referred to was adduced by the Isners for the purpose of establishing that they were proper persons to have the custody of the infant, and that it would be for the best interests of the infant to be placed in their home. There appears no doubt that Mr. and Mrs. Isner are of excellent character and that they could, and are anxious to, furnish a proper home for the infant, but, as stated in *State Department of Public Assistance* v. *Pettrey, et al.*, 141 W. Va. 719, 725, 92 S. E. 2d 917, "Much of the evidence before the Court relates to the nature of the home of defendants and the care which they are able to furnish the infant. From such evidence, it appears reasonably certain that defendants are capable of affording the infant a good home and sufficient care and are anxious to do so. It must be remembered, however, that defendants accepted custody of the infant as 'foster parents' for temporary custody only, and they expressly contracted 'to cooperate with the Department of Public Assistance in carrying out the Department's Plan' for the infant. There is no showing, of course, that the Department of Public Assistance can not or will not provide a home for the infant the equivalent of the one which would be furnished by defendants. While courts always look to the best interests of the child in such controversies, we know of no rule of law requiring the denial of legal custody of an infant to one legally entitled thereto merely because some other person might possibly furnish the child a better home or better care."

It seems clear, therefore, that under the terms of the

mother's relinquishment the appellant is entitled to immediate custody of the infant child here involved. See *West Virginia State Department of Public Assistance* v. *Miller, supra; In Re: Delbert Hammond* v. *Department of Public Assistance of Doddridge Co.,* 142 W. Va. 208, 95 S. E. 2d 345; *Hoy* v. *Dooley,* 144 W. Va. 64, 105 S. E. 2d 877. In *State ex rel. Coffield* v. *Bonar,* 75 W. Va. 332, 83 S. E. 991, this Court held: "1. The absolute right of custody of a minor child, accorded by law to the father, under normal circumstances, may be waived in favor of another person by contract. 2. In such case, the contract controls, unless the welfare of the child demands a change of the custody established by the contract." The principle alluded to is clearly recognized and preserved by the provisions of Code, 49-3-1, as amended.

The decree of the Circuit Court of Tucker County complained of is reversed, and the proceeding is remanded to that court with directions to enter a decree requiring the Isners to immediately deliver the custody of the child named above to the West Virginia State Department of Public Assistance.

*Reversed;*
*remanded with directions.*