STATE *ex rel.* WEST VIRGINIA
DEPARTMENT OF PUBLIC ASSISTANCE

*v.*

ERNEST A. SEE, *Judge, etc., and*
FOREST ISNER AND EDITH ISNER, HIS WIFE

(No. 12029)

Submitted May 2, 1960.          Decided June 14, 1960.

*W. W. Barron,* Attorney General, *W. Bernard Smith,* Assistant Attorney General, for relator.

*Cleo S. Jones,* for respondents.

GIVEN, JUDGE:

This original proceeding in prohibition, instituted by the State of West Virginia at the relation of the State Department of Public Assistance, is prosecuted against the Honorable Ernest A. See, Judge of the Twenty-first Judicial Circuit, and Judge of the Juvenile Court of Tucker County, and Forest Isner and Edith Isner, for the purpose of prohibiting further proceedings in the matter pending in the Juvenile Court of Tucker County, before the respondent judge, on a petition of respondents Isners, filed on April 11, 1960. A rule was issued by this Court, returnable April 22, 1960, but, on petition of the respondent judge, the hearing was continued to May 2, 1960. The matter is disposed of on the petition of the relator and exhibits filed therewith, the answer of the Isners, the answer of the respondent judge, the demurrers of respondents to the petition of relator, on brief and oral arguments of relator, on brief and oral arguments of the Isners, and on separate brief and oral argument of the respondent judge.

The proceeding sought to be prohibited involves questions relating to the custody and guardianship of the child mentioned in the opinion of this Court in the proceeding styled *In Re: Adoption of Rosemary Bailes Johnson, an Infant,* reported in 144 W. Va. 625, 110 S. E. 2d 377. The pertinent facts detailed in that opinion need not be restated here. We here state only such facts as are deemed necessary to a consideration of the issues now involved.

Subsequent to the filing of the opinion in the prior case, in accordance with the mandate issued in that case on October 6, 1959, but not until February 24, 1960, the child was delivered by the Isners into the custody and care of the relator. According to allegations of the petition, not denied, the child has been placed and now is in a home in some county other than Tucker, in the home of "reputable persons who are in the process of adopting said child".

According to allegations of the Isners in the petition filed in the proceeding sought to be prohibited, the mother of the child executed an instrument "purporting to release all her parental rights to the custody and guardianship of said child to the" relator, and that a child welfare worker for relator, on December 20, 1956, filed a petition in the Juvenile Court of Tucker County, "seeking to have the said infant adjudged a dependent and neglected child"; that the court entered an order so adjudging, on January 3, 1957, and committed the child to the custody and guardianship of the State Department of Public Assistance, but that such order was set aside, by that court, on June 20, 1957, and that such proceeding is still pending in that court, and for such reasons, and by virtue of provisions of Article 5 of Chapter 49 of the Code, as amended, that court has continuing jurisdiction to hear and determine such questions.

The petition filed by the Isners in the proceeding sought to be prohibited alleges these further facts: That the child had remained in the home of the Isners for a long period of time, and was well cared for by them; that relator acted "arbitrarily and capriciously in its refusal to leave the said child in" such home; that the child is now a "neglected child", and has been "abandoned by her mother"; that the "best interest of the said child will be served by this Court terminating the custody" of the relator; that the child is "no longer in need of care by the" relator; that the action of the relator in the manner of taking possession of the child, pursuant to the mandate mentioned, "was cruel to the said child and detrimental to her well being"; that the relinquishment agreement signed by the mother transferring custody of the child to relator is "null and void", was obtained "contrary to the laws of West Virginia and is without force and effect"; that relator has no power "to accept a child or children for care from a parent or parents"; that the welfare of the child "demands a change of custody"; that relator "can not and will not furnish the said child a

home with the love, care, understanding, and security that will be and has been furnished by" the Isners; and that the Department of Public Assistance can not "give a valid consent for anyone to adopt the said child".

The petition of the Isners prayed that relator "be required to immediately deliver custody" of the child to the Isners; that the child be present at the hearing; that temporary and permanent care of the child be awarded to the Isners; that the contract executed by the mother "be declared null and void"; that the child "be adjudged an abandoned and neglected child"; and for general relief.

The respondent judge, on April 11, 1960, entered an order setting a time for hearing of the matters arising on the petition, for April 29, 1960, requiring that a copy of the petition be served on the county department welfare worker and on the Department of Public Assistance of West Virginia, and that such service "shall be sufficient notice and authority for the" county department welfare worker and the said Department of Public Assistance to have the child "present at the said hearing".

The petition in the instant proceeding, after alleging facts concerning the former litigation and the delivery of possession of the child as directed by the mandate, further alleges that the child is not in Tucker County, alleges the filing of the petition of the Isners by the respondent judge, and the attempted exercise of jurisdiction over the matters by the respondent judge, and says that the respondent judge did "exceed his authority, discretion, power, and jurisdiction in entertaining jurisdiction of this matter", and prays that further proceedings in connection therewith be prohibited.

The facts alleged in the petition filed in the proceeding sought to be prohibited are, in effect, reiterated in the answers filed herein, the respondents admitting the filing of the petition and the entry of

the order in the proceeding sought to be prohibited, the prior litigation mentioned, the delivery of possession of the child to relator, but say that they are without knowledge as to whether the child has been removed from Tucker County. They deny that the respondent judge lacks jurisdiction of the matters, or that he has exceeded his authority or jurisdiction in relation thereto, deny that relator ''has legal custody'' of the child, and say that relator ''retains custody of the said Child by virtue of a null and void contract''. The answer of the respondent judge, in much detail, informs of facts involved in the prior proceedings, including the proceeding instituted by the department for the purpose of having the child adjudged a dependent and neglected child, alleging that the Juvenile Court of Tucker County has jurisdiction to hear and determine the matters brought before that court by the petition of the Isners filed in the proceeding sought to be prohibited; that changed circumstances since June, 1957, entitle the Isners to further litigate the right of relator to the custody of the child; and that such custody can not be acquired by relator except by commitment by an order of a court having jurisdiction.

It is vigorously contended that the Juvenile Court of Tucker County, under the authority of Code, 49-5-2, as amended, relating to continuing jurisdiction of a juvenile court, has such continuing jurisdiction of the child as to permit it to hear and determine the matters alleged in the petition filed in the proceeding sought to be prohibited, notwithstanding the prior final litigation, and notwithstanding the child, at the time of the institution of the proceeding, or since, was not within the territorial jurisdiction of the court. We think the meaning of the words of the pertinent language of that section was clearly determined in the recent proceeding styled *In the Matter of the Adoption and Custody of Karen Dawn Underwood,* 144 W. Va. 312, 107 S. E. 2d 608, wherein the Court concluded that the pertinent words of the statute ''merely prevent a decree entered in regard to such child from becoming

res judicata". Clearly, we think, the statute was not intended to and does not have the effect of denying all jurisdiction over a child, in such circumstances, to other courts, in every circumstance, and most certainly does not indicate that the Juvenile Court of Tucker County has jurisdiction to redetermine matters that have been fully litigated in this Court.

Respondents also argue that the Juvenile Court of Tucker County still retains jurisdiction over the matters involved by reason of the fact that a certain proceeding instituted by the State Department of Public Assistance in that court for the purpose of having the child adjudged to be a neglected and dependent child is still pending. It must be noticed, however, that the Isners filed a petition and amended petition in the proceeding which reached this Court, cited above, wherein, on full allegations, they prayed "that the order of the Juvenile Court of Tucker County, West Virginia, entered on the 3rd day of January, 1957, be set aside by the said Court for lack of proper notice; that the contract between the Department of Public Assistance and the petitioners, bearing date on the 18th day of October, 1956, be declared null and void, on the ground of fraud; that the said infant, Rosemary Johnson, be given into the care, custody and control of your petitioners; that the said infant be adopted unto them * * *". The precise questions, therefore, were raised, considered, and fully litigated in the proceeding which reached this Court. It may also be noticed that in the proceeding alleged to be still pending, the petitioner therein moved that such proceeding be dismissed, but that the court, apparently on its own motion, refused to dismiss the proceeding, and that the respondent judge, over objection of the State Department of Public Assistance, ordered that the mother of the child be made "a party to that proceeding for the reason that at least she had a residual interest in said child", notwithstanding the agreement relinquishing all of her rights to the child was before the court, and no one in position to do so had raised any question as to the

validity of the agreement. Code, 49-2-5, as amended, contains this language: "* * * All records regarding children and all facts learned about children and their parents or relatives shall be regarded as confidential and shall be properly safeguarded by the agency and the state department", which indicates, in spirit, at least, the undesirability of bringing before the public, in such a proceeding, matters which may prove detrimental to the best interests of the child. In the circumstances of this case, there appears no justification for the action of the trial court in that respect.

Respondents further contend that the State Department of Public Assistance is retaining the care, custody and guardianship of the child "by virtue of a null and void relinquishing agreement" signed by the mother of the child. The agreement mentioned is the very same agreement considered by this Court in the prior litigation. If we should assume, however, that the agreement was void, for the reasons assigned or for any other reason, the fact assumed would only demonstrate the complete lack of any right of the Isners to custody of the child, for by virtue of that agreement the child was placed in possession of the Isners through the Department of Public Assistance, and by virtue thereof, and the placement contract, the Isners were paid for the care of the child until about the time they repudiated or breached the terms of the contract. It is clear, therefore, that no merit exists in the contention. Moreover, the validity of the agreement and the right of relator to retain custody of the child by virtue of the agreement are questions determined by the prior litigation.

Respondents also contend that the State Department of Public Assistance has no power to accept custody of an infant except where such custody is committed to it by a court of competent jurisdiction. Reliance is had on provisions of Code, 49-2-1, as amended. We give no such restricted meaning to the pertinent language of that section. Of course, if the child is committed to the department by a court it becomes the duty

of the department to care for the child but, as to the very child here involved, we held, in the prior case, that the department acquired custody by virtue of the agreement. That is no new principle. Such agreements have been given respect by this Court consistently since the question of such an agreement first arose. See *State ex rel. Harmon v. Utterback,* 144 W. Va. 419, 108 S. E. 2d 521; *In the Matter of the Adoption of Karen Dawn Underwood, supra; Hoy v. Dooley,* 144 W. Va. 64, 105 S. E. 2d 877; *State Department of Public Assistance v. Pettrey,* 141 W. Va. 719, 92 S. E. 2d 917; *Stout v. Massie,* 140 W. Va. 731, 88 S. E. 2d 51; *Bell v. Eicholtz,* 132 W. Va. 747, 53 S. E. 2d 627; *Lipscomb v. Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *Cunningham v. Barnes,* 37 W. Va. 746, 17 S. E. 308; *Green v. Campbell,* 35 W. Va. 698, 14 S. E. 212; *State ex rel. Neider v. Reuff,* 29 W. Va. 751, 2 S. E. 801; *Rust v. Vanvacter,* 9 W. Va. 600. Is it conceivable that the State Legislature should create a department of government for the very purpose of caring for and the placement of helpless, neglected or delinquent children, and then deny that department all power to do so except by an order of a court? An examination of the legislation reveals just the opposite. See Chapter 49, Michie's 1955 Code of West Virginia.

The only other contention of respondents having sufficient merit to be mentioned is that the best interests of the child require that it now be taken from the State and delivered back to the Isners. The question of the best interests of the child was considered and determined in the prior litigation. There we held: "3. An unwed mother may, by contract, relinquish her infant child to the West Virginia State Department of Public Assistance, and the right of that department to the custody of the infant can not be denied merely on a showing that the foster parents are fit persons to adopt the infant." It is most obvious that any allegations or contentions of respondents concerning the best interests of the child, since the compliance with the mandate issued in the prior proceeding, can be only on

speculation, for, admittedly, respondents do not know, are not informed, in what home, or in what county, the child has been cared for since that time. It is equally obvious that they can not know what care or treatment the child has received since the compliance with the mandate.

As to the position of this Court as to what may be for the best interests of the child, we think it can not be made more plain than in the opinion in the prior case. Admittedly, no contract, not even a contract of the State in such circumstances, is permitted to control. The best interest of the child is always the polar star in such a determination, even in a proceeding by or against the State, through the Department of Public Assistance, though it has been repeatedly pointed out that legal rights, including contractual rights, can not be ignored. We have never held that a parent or other person having legal right to custody of an infant may be deprived of such custody, absent any neglect, mistreatment or some voluntary act on the part of such parent or person. When the department accepted from the mother custody of the child here involved it succeeded to the rights of the mother. The department has never surrendered such custody or rights, except temporary custody to the Isners, as clearly established by the contracts. We are aware, of course, that our view of the record in the prior case is not in accord with the view of the lower court but, where the question is properly raised, an appellate court is under exacting duties to determine for itself whether the record evidence sufficiently supports a judgment of a lower court. In the prior case we found it did not. We are yet of that view. We think no useful purpose would be served by repeating the reasoning given in the opinion in the prior case. Much argument is based on the fact that the Isners were permitted to keep custody of the child for a long period of time. It seems to have been ignored, however, that the Department of Public Assistance sought possession of the child within a few months after it was placed with the Isners and that,

through the courts, every reasonable effort was made by the department to regain possession from the Isners. The time expiring between the placement of the child and the making of the demand does not seem to us to be unreasonable, in view of the time usually required to discover willing and proper adopting parents, to make proper investigations and necessary findings, before adoption can properly be arranged or sought. The Isners, knowing of the terms of their contract with the State, and knowing of the inception of the emotions claimed, continued to accept payment for the care and support of the child from the department until about the time the demand for its possession was made. Had they forthrightly informed the department of the pertinent facts concerning such emotions and cooperated with the department in accordance with their agreement, as the department had the right to expect they would do, other arrangements could have been made as to such care, thereby avoiding the difficulties which later arose. Moreover, the mandate of this Court, issued October 6, 1959, recorded by the respondent judge December 15, 1959, was not complied with by the Isners until February 24, 1960, though the opinion and the mandate directed ''the Isners to immediately deliver custody of the child * * * to the West Virginia State Department of Public Assistance''. Mention is made of some application to the Executive Branch of the State Government concerning the matter, apparently for the purpose of attempting to explain the delay, but, if the Isners had a right to any relief from that branch of the government, it could have been afforded subsequent to compliance with the mandate as readily as before. Moreover, the lower court, in its order of June 16, 1958, denied the Isners the right to adopt the child and, since they can not obtain consent for adoption, it can hardly be contended that it would be for the best interests of the child to deny it the right or opportunity of adoption by leaving it in their home. True, the Isners may have developed an ardent love for the child, but the controlling

principle that governs the present question relates to the best interest of the child.

From what has been pointed out, it clearly appears that every substantial question which is posed in the proceeding sought to be prohibited has been fully litigated and finally determined by the decision of this Court, as reported in the opinion mentioned above. This Court, as well as the trial court, is bound by that decision. It is well settled law that final adjudication of matters involved in one proceeding can not be relitigated in a subsequent proceeding between the same parties. See *West Virginia Sanitary Engineering Corp. v. Kurish,* 137 W. Va. 856, 74 S. E. 2d 596; *Gentry v. Farruggia,* 132 W. Va. 809, 53 S. E. 2d 741; *Marguerite Coal Co. v. Meadow River Lumber Co.,* 98 W. Va. 698, 127 S. E. 644; *State ex rel. Connellsville By-Product Coal Co.,* 117 W. Va. 447, 186 S. E. 119, 106 A.L.R. 83. The conclusions reached make it clear that the respondent judge has exceeded his jurisdiction, power and discretion in attempting to entertain jurisdiction in relation to the matters attempted to be relitigated in the proceeding sought to be prohibited, and that the writ of prohibition as prayed for must be awarded.

The respondent judge, either in his separate answer or separate brief, either directly or indirectly, charges that the State Department of Public Assistance "took it upon itself to usurp the right to modify the order" entered by this Court; that the State Department of Public Assistance "while said child was asleep" came and "took her away like a thief in the night"; that the State Department of Public Assistance "breached and violated" its oral agreement; that it did "usurp the right to be the court of last resort"; that it "has seen fit to completely ignore and disregard the orders and directions" of the Supreme Court of Appeals of this State; that it used "trickery and deceit" in connection with the matters involved; that certain recited facts demonstrate "how far the said Department of Public Assistance will go in completely ignoring and flaunting

the orders of a court of competent judisdiction''; that the object of relator in seeking a writ of prohibition in the instant proceeding "seems to have been to prevent the respondents Isners from having a day in court", and to "escape the ignominy" of having violated an agreement with the Isners, "by fraud and deceit, and in a manner as becoming a thief at night"; that certain alleged facts demonstrate "a complete lack of principles governing the actions of the Department"; that proceedings prosecuted by the relator "have not been to determine legal rights * * * but rather have been used by the Department of Public Assistance to attempt to harass courts into surrendering their powers to the Department of Public Assistance"; that the State Department of Public Assistance used "trickery and deceit that might have been becoming to a gypsy"; that this Court should not feel that its "former decision was one that was given to you by divine revelation"; and that very few people sent to the penitentiary by the respondent judge "were as hard-hearted and as cold-blooded and as indifferent and unconcerned about the welfare of children as the Department of Public Assistance of West Virginia is, and that goes from the top to the bottom in this case".

The facts recited, and others, clearly demonstrate existing prejudice on the part of the respondent judge toward the State Department of Public Assistance in the matters involved in the proceeding sought to be prohibited, making it clear that he should be prohibited from attempting to hear or determine further litigation involving such questions.

This Court is not interested in defending the State Department of Public Assistance in any of the matters charged. Like any other department of our government, its actions should be kept within constitutional and statutory bounds, and should not be arbitrary or capricious. Those are matters within the jurisdiction of the courts, when properly brought before them. When the department comes or is brought into court, however, it is, like any other department of our govern-

ment, or like any individual, entitled to a fair and impartial hearing before an unbiased tribunal. Its functions, duties and responsibilities constitute mandates from the Legislature, and so long as it acts within proper bounds it is answerable only to that coordinate branch of our government, not to some theory, belief or philosophy of any individual, or some segregated portion of the public. Courts are to enforce or apply the law as written, not according to what an individual, though a judge, believes the policy in a particular situation should be.

As pointed out in previous decisions of this Court, our Legislature has attempted, through pertinent legislation, to provide a comprehensive system of child welfare, vesting in the department created and charged with the duties of carrying out the program broad powers, discretion and responsibilities. The legislation, in a field most important to the State and its peoples, is designed and enacted in an effort to cooperate with the national agency having corresponding duties and powers within the same field of human relations, and the State Department of Public Assistance "is designated as the agency to cooperate with the children's bureau" of the national government. Code, 49-1-1, as amended. The department was created to administer the public welfare of the State, "(3) To provide public assistance for the indigent aged, indigent blind, and dependent children, which shall conform to the requirements of the federal 'Social Security Act.'" Code, 9-1-1, as amended. It is admonished, to illustrate, to provide care for neglected children in family homes, at board or otherwise; to develop standards for the care of children; to cooperate with the State Department of Health; to cooperate with governing boards of child welfare agencies; to issue certificates for operation of unsupervised foster homes and to remove a child therefrom if deemed necessary; to formulate and apply administrative policies coordinating the care, treatment and education of physically handicapped children; and to promulgate rules and

regulations necessary to give effect to the provisions of the pertinent legislation. The duties illustrated make it most obvious that the department could not properly or efficiently perform the functions assigned to it by the Legislature should each foster parent, in violation of his or her contract with the State, be permitted to decide in each case whether possession of a child should remain in the home where temporarily placed, or in a home selected and approved by the department after the department had made extensive investigations for the purpose of discovering proper and suitable adopting parents, and after having made necessary and proper arrangements with such adopting parents. It should be kept in mind that such agreements as were entered into by the Isners with the department are made for the benefit of the State, through the department, in the interest of neglected or helpless children, and that possession or custody of a child placed temporarily in a foster home by virtue of such agreements is, and continues to be, in legal custody of the State.

It is vigorously contended that prohibition does not lie in the circumstances of this case. Code, 53-1-1, provides: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."

In *White Sulphur Springs, Inc. v. Ripley,* 124 W. Va. 486, 20 S. E. 2d 794, we held: "1. Under Code, 53-1-1, a trial court having jurisdiction of a cause of action and of the parties thereto, may, nevertheless, be prohibited from further proceeding therein, when in so doing it exceeds its legitimate powers." See *Sidney C. Smith Corporation v. Dailey, Judge,* 136 W. Va. 380, 67 S. E. 2d 523; *Thacker v. Ferguson, Judge,* 127 W. Va. 177, 32 S. E. 2d 47; *Brown v. Arnold, Judge,* 125 W. Va. 824, 26 S. E. 2d 238; *Wolfe v. Shaw, Judge,* 113 W. Va. 735, 169 S. E. 326. In *Fahey v. Brennan, Judge,* 137 W. Va. 37, 70 S. E. 2d 438, we held: "6.

Where, in an original proceeding in prohibition, the undenied allegations of the petition filed by the petitioner show that the judge sought to be prohibited is being motivated by interest or by prejudice and bias against the petitioner, this Court will issue a writ of prohibition."

A writ of prohibition must issue as prayed for, prohibiting the further prosecution of the proceeding mentioned and described in the petition herein, and prohibiting the respondent judge from further considering matters in relation to the child named in the petition ordered filed by him on the 11th day of April, 1960, a copy of which last mentioned petition is filed as Exhibit A with the petition filed in the instant proceeding.

*Writ awarded.*