STATE *ex rel.* CAROLYN J. SMITH ACTON, *etc.*

*v.*

EDWIN F. FLOWERS, COMMISSIONER OF WELFARE, *etc., et al.*

(No. 12918)

Submitted April 28, 1970.        Decided June 9, 1970.

*Robert B. King, Ralph D. Keightley, Jr.,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *James G. Anderson, III* Assistant Attorney General, for respondent Flowers.

*John L. Detch,* for respondent Jennings.

CALHOUN, JUDGE:

This case involves a habeas corpus proceeding instituted in this Court by Carolyn J. Smith Acton, (also known as Carolyn J. Acton Leogrande and as Carolyn J. Smith), the petitioner, against Edwin F. Flowers, State Commissioner of Welfare of West Virginia and also against Nelson Jennings and Joyce Jennings, husband and wife, as respondents.

The petitioner seeks a writ of habeas corpus to award to her the custody and control of Audrey Angela Antoinette Acton, a female child born to the petitioner out of wedlock on December 10, 1967, while the petitioner was a prisoner in the Federal Reformatory for Women at Alderson, West Virginia, pursuant to a sentence of imprisonment for three years imposed on March 10, 1967, by the United States District Court for the Southern District of Florida.

The child is now in the custody of respondents Nelson Jennings and Joyce Jennings at their home in Harrison County, West Virginia.

The case was submitted for decision in this Court upon the pleadings with attached exhibits, upon testimony of witnesses taken in the form of depositions and upon briefs and oral argument of counsel for each of the parties.

The child remained in the custody of its mother, the petitioner, at the prison from the date of its birth on December 10, 1967, until March 20, 1968, when the child was voluntarily placed by the mother under the care of the Greenbrier County Department of Public Assistance, by a writing designated as a "Contract for Foster Care". By that writing the petitioner authorized the Greenbrier County Department of Public Assistance to accept the child "for care and to secure medical, surgical, or other aid as the Department deems best." The Greenbrier County Department of Public Assistance is subject to the supervision, direction and control of the State Department of Welfare and the State Commissioner of Welfare.

On March 20, 1968, the child was placed by the county department in the home of Nelson Jennings and Joyce Jennings, respondents, for foster care. The department agreed to pay the foster parents fifty dollars a month plus medical, dental and hospital care for the child, if needed. The foster parents apparently discontinued acceptance of such compensation about the time this habeas corpus proceeding was instituted.

It is undisputed that the child was placed in the Jennings home merely on a foster care basis, as distinguished from a permanent basis. In accepting the child, the foster parents signed a written agreement by which, among other provisions, they agreed:

> "4. To report to the Department of Welfare immediately, by telephone, if possible, otherwise by letter, any sickness or accident to a foster child, change of address, sickness in the family, or anything else of an emergent nature.

> \* \* \*

> "11. To cooperate with the Department of Welfare in carrying out the Department's plan for a foster child, including the plan to return a child to his parents, to transfer him to another foster home or institution, etc.

> "12. To carry out all directions of the Department of Welfare for the care of a foster child and to cooperate in maintaining approved standards of child care established by the Department."

On November 12, 1968, the petitioner was released from the Federal Reformatory for Women in relation to the Florida sentence but was detained in the county jail of Summers County to answer a charge of parole violation involving a prison sentence in the State of California. She was confined in the county jail at the time she instituted this habeas corpus proceeding. The petitioner apparently desired to waive extradition and to return voluntarily to California with the child in her custody, but in the meantime she learned that the

foster parents had refused to surrender custody and control of the child either to her or to the Department of Welfare.

The habeas corpus petition alleges, and apparently it is undisputed, that neither the petitioner nor the department gave to the foster parents, at any time, the right to permanent custody of the child. The petitioner alleges, and it is undisputed, that, at and before the time of her discharge from imprisonment pursuant to the Florida sentence, she made demands to the department for return of the custody of the child to her; that the department made demands to the foster parents for return to it of the custody and control of the child; and that the foster parents have refused to comply with all such demands. The petitioner alleges that the best interests of the child will be served by a restoration of its custody and control to her as the natural mother; and accordingly she prays that the child "be ordered released from the unlawful, illegal and wrongful detention by the Department of Welfare, Nelson Jennings, and Joyce Jennings, his wife, and that the said child be placed in the care, custody and control of her mother, * * * ."

The mother, as the petitioner, has filed a motion that she be permitted to prosecute this habeas corpus proceeding in forma pauperis on the ground that she is "an indigent."

While the style of the case in this Court indicates that the habeas corpus petition was presented and filed in the name of the State of West Virginia at the relation of the mother of the child, the fact is that the petition was presented and filed in her name as the petitioner. She will be referred to in this opinion, therefore, as the petitioner rather than as the relator. This feature of the case becomes pertinent because of the fact that the foster parents, as respondents, have moved to dismiss the habeas corpus petition on the ground that the petitioner was a convict at the time she instituted the habeas corpus proceeding and that, therefore, she lacks legal capacity to prosecute the proceeding in her own name. We are of the opinion that this contention is without merit.

Code, 1931, 28-5-33, as amended, contains the following provision: "When a person is confined in the penitentiary

of this or any other state, or of the United States, * * * ," a committee may be appointed for such convict. We are of the opinion that the petitioner is not a convict in the sense that she is incapable of suing in her own name. She is not presently serving a sentence pronounced by any court. *Craft v. Inland Mutual Insurance Company*, 145 W.Va. 670, pt. 1 syl., 116 S.E.2d 385; *Nibert v. Carroll Trucking Company*, 139 W.Va. 583, pt. 1 syl., 82 S.E.2d 445; *Martin v. Long*, 92 W.Va. 624, 115 S.E. 791.

The respondents Nelson Jennings and Joyce Jennings have filed a motion to dismiss Edwin F. Flowers, State Commissioner of Welfare, as a party to the habeas corpus proceeding on the ground that the child was committed by the mother to the care of the Department of Public Assistance of Greenbrier County. It is asserted in this connection that, under the provisions of Code, 1931, 49-2-16, as amended, only the county departments have authority "to accept children for care from their parent or parents * * * ," and that, in the case of *In Re: Hammond v. Department of Public Assistance of Doddridge County*, 142 W.Va. 208, 213, 95 S.E.2d 345, 348, the Court held that a county department of public assistance is an entity which may maintain a suit, action or proceeding. For reasons to be stated subsequently in this opinion, the motion to dismiss Commissioner Flowers as a party to this proceeding is overruled.

In a return and answer filed by Edwin F. Flowers in his official capacity, it is alleged that he, in such official capacity, "does not have the body" of the child in question "to bring and produce at the time and place set out in said writ", but that he "stands ready to comply with any decree which this Court may make pertaining to said child." In his return and answer, Commissioner Flowers alleges that the petitioner, on March 20, 1968, "voluntarily placed her said infant child under the care of the Department of Public Assistance of Greenbrier County." In an affidavit filed as an exhibit with the return and answer of Commissioner Flowers, it is stated that, on October 10, 1969, John Detch, an attorney of Lewisburg, West

Virginia, appeared at the office of the Greenbrier County Department of Public Assistance and stated that he had been retained as counsel for Mr. and Mrs. Jennings, respondents, and that they "were starting litigation for custody of Angela Acton."

The prayer of Commissioner Flowers' return and answer is "that since Audrey Angela Action is an infant of tender years, and by reason of her infancy is incapable of understanding, or of taking care of her rights and interests, that this Court in its wisdom, pursuant to law and equity, decide what is proper and in the best interest of said infant child. Respondent, Edwin F. Flowers, prays to be hence dismissed."

As we understand the allegations and prayer of the return and answer of Commissioner Flowers, he does not pray that the child be returned to the custody, care and control of his department or to the child's natural mother, the petitioner. As we construe the allegations and prayer of his return and answer, Commissioner Flowers assumes a position of neutrality in the case and prays merely that the Court take such action as, in the judgment of the Court, will best promote the welfare of the child.

In a pleading designated as a reply, replication and traverse, filed in behalf of the petitioner in opposition to the return and answer of Commissioner Flowers, she opposes his prayer for his dismissal as a party to the habeas corpus proceeding.

In a return and answer to the petition presented and filed by and in behalf of Nelson Jennings and Joyce Jennings, respondents, they allege that the facilities, rules and regulations of the prison in which the petitioner was confined permitted her to retain, nurse and provide for the well-being of the child; that she elected not to retain the child with her in the prison; that thereby she abandoned and deserted the child; and that the petitioner is not a suitable and proper person to have the care and custody of the child.

In their return and answer, Mr. and Mrs. Jennings detail a list of approximately twenty-six arrests of the petitioner, or

other encounters with law enforcement authorities and courts in various states of the nation, beginning with an arrest and jail sentence in Yuma, Arizona, on April 25, 1952, upon a charge of disturbing the peace and including the conviction which resulted in her confinement in the federal prison at Alderson, West Virginia. While many of the episodes thus listed were minor in nature, the petitioner, in a stipulation which was made a part of her testimony in this case, agreed that her criminal record during this period of time includes at least four convictions and sentences upon felony charges. These felony charges involved the giving of worthless checks and charges relating to stolen automobiles. In her testimony, the petitioner stated that she had been an alcoholic since 1952, but that her alcoholism is in an arrested stage and that at present she is a "sober" alcoholic. On or about July 21, 1969, the petitioner was convicted in the United States District Court for the Southern District of West Virginia upon a charge of escape from the federal prison at Alderson, West Virginia, and, pursuant to that conviction, she was placed on probation for a period of two years.

In their return and answer, Mr. and Mrs. Jennings allege that they are able financially to provide for the education, including college education, of the child; that they have love and affection for her and feel compelled to do all things necessary for her best interests; and that the best interests of the child would be served by leaving her in their custody. Mr. and Mrs. Jennings pray, in their return and answer, that they be permitted to "retain the continued custody" of the child and that no further action be taken or ordered.

It would serve no useful purpose, we believe, to record in minute detail all the elements of misfortune and misconduct which formed a practically continuous pattern in the life of the petitioner over a period of many years prior to the time she became a prisoner in the federal prison at Alderson, West Virginia. She testified that she was born at Valdosta, Georgia, on July 25, 1929; that her maiden name was Carolyn Janene Smith; that on November 16, 1946, she was married to Domonic Joseph Leogrande when she was seventeen and he

was twenty-three years of age; that he deserted her children and her in 1952 "enroute to Prescott, Arizona"; that she was divorced from him in Florida in 1957, at which time she was awarded custody of their three sons; that Leogrande is "a compulsive drinker and a medical drug addict"; that while she was in prison from time to time, her mother cared for her three sons until her death; that two of the sons are now married and "in service"; that her former husband, Leogrande, whose address is "unknown", is taking care of the third son, Joseph, whose age is thirteen; that Leogrande, her former husband, is the father of the child involved in the present case; and that the conception occurred while she and Leogrande were together on March 3, 1967, in California. After her divorce from Leogrande, she married a man whose surname apparently was Acton. The record fails to disclose the time and place of this second marriage, its present status or where Acton lives, if he is living.

On February 18, 1970, the petitioner was released from the Summers County jail on a bond in the penalty of $1,000. At the time her deposition was taken, March 6, 1970, she was employed in the home of a couple named Mr. and Mrs. Ward, parents of seven children, in Summers County. If custody of her child had been restored to her, her purpose was to keep the child in the Ward home. Her employment there consisted mainly of domestic or general household work for which she was being paid $15 a week, in addition to board and room.

We have been advised by a written stipulation of counsel filed herein, since the case was argued and submitted for decision, that the State of California has terminated the petitioner's parole and has abandoned its purpose of requesting the extradition of the petitioner to that state. We have been advised by counsel that she is presently employed in a private home in Charleston, West Virginia. We are not advised of the amount of her compensation earned in that employment, nor are we advised of the extent of the permanency of that employment. We are not advised of her present plans for caring for the child if its custody is hereafter restored to her. She testified that she had not been drinking alcoholic

beverages for three years at the time her deposition was taken, and that she then had "no desire for it."

The fitness of Mr. and Mrs. Jennings as foster parents has not been questioned. Mr. Jennings is twenty-nine years of age, a graduate of the College of Agriculture of West Virginia University and taught two years in a high school in Mason County. At the time the child was placed in their home, Mr. and Mrs. Jennings lived at Lewisburg in Greenbrier County where he was assistant county supervisor for Farmers Home Administration. Thereafter he was promoted to the position of County Supervisor for Harrison County, where he, Mrs. Jennings and the child now live. His offices are at Clarksburg. His salary when he testified was $9,600 a year. He expected soon thereafter to receive an increase in annual salary to the sum of $11,200. Mrs. Jennings is twenty-eight years of age. She has had one and one-half years of college training and is a graduate of Morgantown Business College. Thereafter she was employed as a secretary by West Virginia University and subsequently she was employed as a secretary for the Mason County Board of Education.

The child had been in the home of Mr. and Mrs. Jennings about eighteen months when demand was made to them to return the child to representatives or employees of the Greenbrier County Department of Public Assistance. Both Mr. and Mrs. Jennings testified that, when the child was placed in their care, they were assured by representatives of the Greenbrier County Department of Public Assistance that, if the petitioner would not voluntarily relinquish her parental rights, legal action would be taken by the department to terminate such parental rights in order that Mr. and Mrs. Jennings could adopt the child.

Mrs. Charlotte L. Gherman testified that, at the time the child was delivered to Mr. and Mrs. Jennings, she was a child welfare supervisor employed by the West Virginia Department of Welfare for an area which included Summers County. Mrs. Gherman testified further that she warned Mrs. Jennings that the child was not adoptable, though

adoption was discussed "with the thought that possibly Mrs. Acton would relinquish the child of her own accord", and that "if parental rights and parental guardianship were severed from Mrs. Acton, making the child adoptable, we would have considered the Jenningses as adoptive parents."

This is a difficult case. In some respects, we believe, it differs from any case of this nature which this Court previously has had for decision.

The mere fact that the child was born out of wedlock does not deprive the mother of the right to seek recovery of its custody in a habeas corpus proceeding. *Pierce v. Jeffries,* 103 W.Va. 410, 137 S.E. 651. The petitioner has not forfeited her parental rights merely because she has been convicted of criminal offenses, including the charge of escape from the prison after the child was born. *Banks v. Culver,* 141 Cal. App. 2d 703, 297 P.2d 105; *Diernfeld v. The People of the State of Colorado,* 137 Colo. 238, 323 P.2d 628.

This case differs materially from *Nelson v. Department of Public Assistance of Raleigh County,* 149 W.Va. 143, 139 S.E. 2d 373; *State ex rel. West Virginia Department of Public Assistance v. See,* 145 W.Va. 322, 115 S.E.2d 144; *In Re: The Adoption of Rosemary Bailes Johnson,* 144 W.Va. 625, 110 S.E.2d 377; and *In the Matter of: The Adoption and Custody of Karen Dawn Underwood,* 144 W.Va. 312, 107 S.E.2d 608. In each of these four cases the mother of an illegitimate child relinquished her parental rights and granted power to place the child for adoption. The petitioner in the instant case has not, by fair agreement or otherwise, transferred, relinquished or surrendered the custody of her child to another person as in the numerous cases listed in *Whiteman v. Robinson,* 145 W.Va. 685, 691-92, 116 S.E.2d 691, 695. The mother of the child in this case has not been deprived of its custody by a court exercising jurisdiction as a juvenile court in relation to neglected children pursuant to the provisions of Chapter 49, Code, 1931, as amended, as was the case in *In Re: Hammond v. Department of Public Assistance of Doddridge County,* 142 W.Va. 208, 95 S.E.2d 345. Under the provisions of Chapter

49, Code, 1931, as amended, juvenile courts are given broad jurisdictional powers in relation to children which this Court cannot exercise except on appeal from the action of juvenile courts.

While the mother in this case placed her child in the custody of the county department on a restricted basis, she did not, by fair agreement or otherwise, place the child in the custody of Mr. and Mrs. Jennings. The mother was a stranger to the contract by which the child was placed in the foster home by representatives of the State Department of Welfare.

The general rule, subject to some exceptions or qualifications, is that the right of a natural parent to the custody of his or her infant child is paramount to the right of any other person. *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 168 S.E.2d 798. "The natural parent of an infant child who has not abandoned it, and who is not proved to be unfit for the trust, is entitled to its custody, unless the right to such custody has been transferred to some other person in some manner recognized as valid by law." *Hoy v. Dooley*, 144 W.Va. 64, syl., 105 S.E.2d 877.

This case, in final analysis, represents a contest between the natural mother and the foster parents involving the question of the present right to the custody of the child. The foster parents, as we have stated previously, did not receive custody of the child from the mother. They received custody from representatives of the State Department of Welfare by a contract which required them, upon request, to return the child to the custody of proper representatives of the department. They have refused to comply with proper requests or demands for return of the custody of the child to the department. In these circumstances, in the contest between the natural mother and the foster parents for the present custody of the child, this Court holds that the rights of the natural mother are paramount and must be given recognition.

We are of the opinion that Commissioner Flowers should not be dismissed as a party to this habeas corpus proceeding. His department, we believe, is inextricably involved in this

case. His department is involved in contractual arrangements with both the foster parents and the natural mother. We believe it would be most unfortunate if that department should be permitted to escape all responsibility for the child now that it has become the subject of the unfortunate and rather involved situation presented in this case. By Section 1, Article 1, Chapter 49, Code, 1931, as amended, and by other provisions of that chapter, the State Department of Welfare is charged with broad powers, duties and responsibilities in relation to children. The department has assumed and exercised some of such powers and responsibilities in relation to the child involved in this case.

Respondent Edwin F. Flowers, State Commissioner of Welfare, is directed to order a proper representative or representatives of his department to request that respondents Nelson Jennings and Joyce Jennings deliver custody of Audrey Angela Antoinette Acton to such representatives for and in behalf of the State Department of Welfare; and respondents Nelson Jennings and Joyce Jennings are required to comply with such request for delivery of custody, pursuant to the terms of the contract for foster care. The State Department of Welfare, through its proper representatives, shall promptly obtain the physical custody of the child from the foster parents and forthwith deliver custody of the child to its natural mother, the petitioner.

The decision of the Court in this case, in accordance with general principles relating to award by courts of custody of infant children, is without prejudice to the rights of any person or party in interest to apply hereafter to a court of competent jurisdiction for such order as the circumstances and the welfare of the child may require.

A writ of habeas corpus is awarded in accordance with the decision of the Court expressed in this opinion.

*Writ awarded.*