# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.T.**

**No. 20-0423** (Cabell County 17-JA-338)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, M.T., by counsel Steven T. Cook, appeals the Circuit Court of Cabell County's May 8, 2020, order denying her motion to set aside judgment and reaffirming the termination of her parental rights to L.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel William P. Jones, filed a response in support of the circuit court's order. The guardian ad litem, Abraham Saad, filed a response on behalf of the child, also in support of the circuit court's order, and supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights, denying her post-termination visitation with the child, denying her motion to set aside judgment, and placing the child with nonrelatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2017, the DHHR filed a child abuse and neglect petition against petitioner alleging that she abused drugs and previously gave birth to L.T. who was born drug-exposed in October of 2017. Specifically, the DHHR alleged that petitioner tested positive for methamphetamine in the weeks before giving birth to L.T. and that she also tested positive for Subutex and opiates upon admission to the hospital to give birth to L.T. When interviewed by the Child Protective Services ("CPS") worker, petitioner admitted to a long history of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

methamphetamine and opiate abuse, and that she had a criminal history of drug charges. Petitioner also claimed to be participating in the Maternal Addiction Recovery Center through the hospital. The DHHR first attempted to implement an in-home safety plan. However, the DHHR reviewed petitioner's criminal background information and found that petitioner had pending drug charges from July of 2017 for possession of methamphetamine with the intent to distribute in Wayne County, West Virginia. Based upon petitioner's pending criminal charges and long history of substance abuse, the DHHR ceased the in-home safety plan and filed the instant petition alleging that petitioner's active use of drugs "impaired her parenting skills to a degree as to pose an imminent risk to the health and safety of the child."[2]

The circuit court held an adjudicatory hearing in April of 2018, during which the circuit court adjudicated petitioner as an abusing parent. The circuit court granted petitioner a post-adjudicatory improvement period in June of 2018. However, the circuit court terminated petitioner's improvement period in November of 2018 due to petitioner's failure to comply with services, submit to drug screens, attend supervised visitations, participate in multidisciplinary team meetings, or attend hearings.

After setting and continuing several hearings due to petitioner's failure to appear, the circuit court held a dispositional hearing in July of 2019. Petitioner again failed to appear but was represented by counsel. The DHHR presented evidence that petitioner had not contacted the CPS worker or visited her child during the course of the proceedings, which spanned twenty-one months. The circuit court found that petitioner had not complied with her case plan and had new pending criminal charges in Wayne County. Further, the circuit court found that it was in the child's best interest to remain in her foster care home and denied post-termination visitation to petitioner. At the close of evidence, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Prior to the entry of the order terminating petitioner's parental rights, petitioner filed a motion to set aside the circuit court's ruling, arguing that her counsel was unaware that she was incarcerated at the time of the dispositional hearing and, therefore, was unable to have the jail transport her to the final dispositional hearing. Several hearings were set upon petitioner's motion, but the regional jail authority failed to transport petitioner to these hearings. An order terminating petitioner's parental rights was entered on November 1, 2019.

In March of 2020, the circuit court held a hearing on petitioner's motion to set aside the circuit court's rulings. The DHHR presented evidence of petitioner's frequent jail communications with friends and family to show that petitioner chose not to contact her counsel, the DHHR, or the circuit court regarding the underlying proceedings and her whereabouts.

---

[2]Petitioner was incarcerated, released, and reincarcerated several times throughout the proceedings below. According to the record, petitioner was incarcerated around April of 2018 and remained incarcerated for five months. She was released on parole in October of 2018 and, upon violating the conditions of her parole, absconded from custody until her reincarceration nearly a year later.

Petitioner testified that she was currently incarcerated because she absconded from an inpatient drug rehabilitation facility and was subsequently arrested on new criminal charges in Wayne County. Petitioner gave no explanation for her failure to contact her attorney and admitted to abusing drugs and failing to contact her counsel during times that she was not incarcerated. Petitioner further requested post-termination visitation with the child on the basis that she would be eligible for parole in May of 2020 and requested that the child be placed with the maternal grandmother. The circuit court denied petitioner's request for placement, noting that the child had been in placement with her foster family for nearly two years and that the grandmother was an inappropriate caregiver due to previous substantiated CPS claims. The circuit court denied petitioner's motion to set aside its termination of her parental rights, finding that petitioner was aware of the underlying proceedings during the time of the dispositional hearing and failed to contact her counsel or the circuit court about her whereabouts. In an order entered on May 8, 2020, the circuit court reaffirmed all prior rulings, including the termination of petitioner's parental rights, to allow for the filing of a timely appeal. Petitioner now appeals this order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in terminating her parental rights. Essentially, petitioner argues that she was released on parole in May of 2020, is employed, and is sober, and, therefore, the conditions of abuse and neglect have been corrected.[4]

---

[3]The father voluntarily relinquished his parental rights. The permanency plan for the child is adoption by her foster family.

[4]In her reply brief, petitioner argues, generally, that the court system fails to give parents a "fair chance at dealing with their addiction" and reunification with their children, and that the timeframes for these cases are "far too Draconian." Regarding improvement periods, this Court has noted that "[i]mprovement periods are . . . regulated, both in their allowance and in their

(continued . . .)

However, this argument not only relies on petitioner's unsupported assertions as to her current status, but, more importantly, relies on assertions that were not, and could not have been, part of the record below. All of the assertions upon which petitioner relies allegedly occurred well after the final hearing in the proceedings below and, therefore, could not have formed the basis of the circuit court's ruling. As such, petitioner cannot establish, based on these assertions alone, how the circuit court erred in terminating her parental rights at the time of the dispositional hearing based upon the evidence presented to the circuit court. As such, petitioner cannot be entitled to relief in this regard.[5]

duration, by the West Virginia Legislature, which has assumed the responsibility of implementing guidelines for child abuse and neglect proceedings generally." *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000). We have noted that the requirements set forth in West Virginia Code § 49-4-610

> are not mere guidelines. . . . The time limitations and standards contained therein are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority. Discretion granted to the circuit court within this framework is intended to allow the court to fashion appropriate measures and remedies to highly complex familial and inter-personal issues—it does not serve as a blanket of immunity for the circuit court to manage abuse and neglect cases as its whim, personal desire, or docket may fancy.

*In re J.G.*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018). Further, we have previously held that "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." *J.G.*, 240 W. Va. at 194, 809 S.E.2d at 456, syl. pt. 6, (citation omitted). "Critically, '[a] parent's rights are necessarily limited . . . [as to improvement periods] because the pre-eminent concern in abuse and neglect proceedings is the best interest of the child subject thereto.'" *Id.* at 204, 809 S.E.2d at 463 (citation omitted). Finally,

> the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). While petitioner argues that parents addicted to drugs need more time than the length of time prescribed by statute, our case law makes it abundantly clear that a parent's opportunity to continue to participate in an improvement period is not upheld to the detriment of the children. Accordingly, we find no error in this regard.

[5]Also in her reply brief, petitioner cites Syllabus Point 2 of *State ex rel. Acton v. Flowers*, 154 W. Va. 209, 174 S.E.2d 742 (1970), which states that "[a] natural parent of an infant child

(continued . . .)

Next, petitioner claims that the circuit court erred by denying her request for post-termination visitation because she had a parole hearing set for May of 2020 and would likely have participated in visitation. This Court has previously held that

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). At the time of the dispositional hearing, petitioner had clearly failed to remedy the conditions of abuse and neglect as she completely abdicated all participation in her case plan. Below, the circuit court addressed petitioner's sole argument for post-termination visitation and found that petitioner's projected parole date was only speculation. Furthermore, according to the record, petitioner never

---

does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses." However, petitioner provides no argument whatsoever with regard to this point of law. This failure is in direct contravention of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief in this regard is inadequate and fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address this issue on appeal.

5

exercised supervised visitation with the child during stints when she was not incarcerated. Most importantly, petitioner failed to allege how post-termination visitation would be in the child's best interest. The circuit court found that the child's permanency plan was adoption by the foster family with whom she had lived for nearly two years and that post-termination visitation would interfere with the child's permanency. Given these circumstances, we find no error in the circuit court's decision to deny petitioner post-termination visitation.

Additionally, petitioner argues that she should have been given a second chance due to the failure to have her transported to the dispositional hearing or the hearings regarding her motion to set aside the termination of her parental rights. She further argues that her due process rights were violated due to this failure. At the outset, we note that "[w]hether an incarcerated parent may attend a dispositional hearing addressing the possible termination of his or her parental rights is a matter committed to the sound discretion of the circuit court." Syl. Pt. 10. *State ex rel. Jeanette H. v. Pancake*, 207 W. Va. 154, 529 S.E.2d 865 (2000). Accordingly, petitioner did not have an absolute right to attend the final dispositional hearing.

Nonetheless, the circuit court held an evidentiary hearing upon petitioner's motion to set aside judgment, particularly addressing petitioner's failure to appear for the dispositional hearing due to her incarceration. As discovered during the hearing, petitioner failed to contact her counsel, the DHHR, or the circuit court regarding her incarceration or whereabouts. We have held that,

> [i]n order to activate the procedural protections enunciated in Syllabus points 10 and 11 of *State ex rel. Jeanette H. v. Pancake,* 207 W.Va. 154, 529 S.E.2d 865 (2000), an incarcerated parent who is a respondent to an abuse and neglect proceeding must inform the circuit court in which such case is pending that he/she is incarcerated and request the court's permission to attend the hearing(s) scheduled therein. Once the circuit court has been so notified, by the respondent parent individually or by the respondent parent's counsel, the determination of whether to permit the incarcerated parent to attend such hearing(s) rests in the court's sound discretion.

Syl Pt. 4, *In re Stephen Tyler R*., 213 W. Va. 725, 584 S.E.2d 581 (2003). Having heard petitioner's testimony, the circuit court properly denied petitioner's motion to set aside judgment and found no reason to alter its previous termination of petitioner's parental rights and affirmed all prior rulings. We likewise find no error.

Finally, petitioner argues that the circuit court erred by placing the child with a foster family rather than with the maternal grandmother.[6] While it is true that our law creates a

---

[6]Petitioner's assignment of error refers to "relatives," but her arguments are tailored only toward the maternal grandmother. In her reply brief, petitioner contends that the circuit court "failed to review available and proper relative placements," but she fails to identify any potential relative placements that were not considered below.

preference for placement of children with grandparents, we find no error here. *See* W. Va. Code § 49-4-114(a)(3). According to the record, the circuit court noted that the DHHR investigated the maternal grandmother's home as a potential placement for the child and deemed it inappropriate due to her previous substantiated CPS claims. Given that the record clearly shows that the maternal grandmother's home was not an appropriate placement for the child, petitioner's argument is without merit.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 8, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 2, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton