FILED
**November 19, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0997 – *In re: A. F.*

WOOTON, J., concurring, in part, and dissenting, in part:

I concur with the majority's conclusion that the circuit court erred by failing to apply the *Cecil T.* factors regarding incarceration. *See* Syl. Pt. 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). However, the proper remedy for that error is vacation of the order and remand for adequate fact-finding and analysis by the circuit court. It is not the place of this Court to step into the adjudicatory role of the circuit court and preemptively resolve the case after finding error—particularly where additional, critical facts have been developed pending appeal. This Court has long held that "[w]hen the requisite procedure is not followed in an abuse and neglect case[] . . . the order resulting from such deviation will be vacated and the case will be remanded for entry of an order that satisfies the procedural requirements[.]" *In re Emily G.,* 224 W. Va. 390, 396, 686 S.E.2d 41, 47 (2009). Accordingly, I respectfully dissent to the majority's affirmation of the circuit court's termination of petitioner's parental rights.

It is critical to recognize that the Rules of Procedure for Child Abuse and Neglect Proceedings as well as our extensive body of caselaw do not exist merely as a vehicle to reach a predetermined outcome. Rather, they serve an important due process function for parents whose fundamental rights are at stake: "The Rules of Procedure for Child Abuse and Neglect Proceedings and the related statutes . . . vest carefully described and circumscribed discretion in our courts, intended to protect the due process rights of the

1

parents as well as the rights of the innocent children." *In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001). These procedures and our precedent "also provide the necessary framework for appellate review of a circuit court's action." *Id.*

The majority has determined that, despite the circuit court's failure to properly consider and apply the balancing test set forth in *Cecil T.*, the late-developed record is adequate to post-hoc affirm the petitioner's termination. Importantly, it was only after the lower court terminated petitioner's parental rights and while this case was pending appeal—and after briefing had been completed—that any semblance of clarity about petitioner's criminal charges and duration of his incarceration developed. These are vitally relevant inquiries under the *Cecil T.* holding—petitioner is entitled to respond to these inquiries and stake out a position as to what that newly-acquired information means in terms of his parental rights.

More specifically, given the now relatively certain duration of petitioner's incarceration, he should be permitted to argue on remand which of the dispositional alternatives contained in West Virginia Code § 49-4-604 (2020) best corresponds with A. F.'s welfare and need for permanency. *Cecil T.* instructs that incarceration must be considered "in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity." 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3. Termination of parental rights contains a similar statutory prerequisite that termination must be "necessary for the welfare of the child." *See In re A. P.*, 245 W. Va.

2

248, ___, 858 S.E.2d 873, 880 (2021) (underscoring the "distinct requirement[]" that termination be "necessary for the welfare of the child" in terms of the child's "physical and emotional well-being."). Petitioner may well wish to argue that a disposition under West Virginia Code § 49-4-604(c)(5) is the least restrictive disposition which properly venerates the best interests of A. F. and provides adequate permanency—particularly where his only current parenting deficit is his incarceration. West Virginia Code § 49-4-604(c)(5) provides:

> Upon a finding that the abusing parent or battered parent or parents are *presently* unwilling or *unable to provide adequately for the child's needs*, commit the child *temporarily* to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

(emphasis added). Just this term, this Court unanimously endorsed just such an arrangement. *See In re S. C.*, No. 20-0816, slip op. at 25-26 (W. Va. October 29, 2021) (slip op.) (holding that parent who has "remedied the conditions that led to his adjudication" should be granted "less restrictive disposition 5" in lieu of termination and rejecting "presum[ption]" that termination is necessary for child's welfare "[s]imply because the record is clear the child should remain" in placement outside of the home).

However, it is the prerogative of the circuit court, upon receiving these arguments under a better understanding of the applicable standard, to make findings of fact and conclusions of law in the first instance regarding the proper disposition. *See Edward B.*, 210 W. Va. at 632, 558 S.E.2d at 631 (quoting *Nicpon v. Nicpon*, 157 N.W.2d 464, 467

3

(Mich. Ct. App. 1968)) ("'Clear and complete findings by the trial judge are essential to enable us properly to exercise and not exceed our powers of review.'"). This Court has repeatedly made clear that this is the role of the circuit court where error permeates the order on review and/or important information was not considered:

> [T]he circuit court's order, as well as the appendix record, show that the circuit court was lacking important evidence necessary for determining the petitioner's parental fitness to parent C. N. Similar to our decision to reverse and remand in *In re Timber M.,* we are left "with the firm conviction" that no one adequately considered the petitioner's parental fitness to have custody of C. N.

*In re A. N.*, 241 W. Va. 275, 289, 823 S.E.2d 713, 727 (2019) (citations omitted); *see also In re Emily*, 208 W. Va. 325, 339, 540 S.E.2d 542, 556 (2000) ("[W]e are left with the firm conviction that the final disposition of this abuse and neglect case is more appropriately decided, in the first instance, by the circuit court. . . . [I]n the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact.").

Not only has petitioner been deprived of the ability to argue what the newly adduced information necessitates under our statutory scheme, but the majority's affirmation of termination improperly suggests that his now-certain incarceration alone demands it. In absence of any other properly adjudicated parenting deficits, the majority finds that petitioner's six-year federal sentence is sufficient basis upon which to terminate, implicitly creating a bright line rule as to the length of incarceration which presumptively satisfies *Cecil T.* However, *Cecil T.* portends no such bright line and counsels to the

contrary: "[T]he mere fact that someone is incarcerated will not result in automatic termination of parental rights[.]" 228 W. Va. at 97, 717 S.E.2d at 881.[1]  In fact, this Court long ago made clear that "[a] natural parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses." Syl. Pt. 2, *State ex rel. Acton v. Flowers*, 154 W.Va. 209, 174 S.E.2d 742 (1970).

Instead, the Court has explained that "while an individual's incarceration may be *a* criterion in determining whether his/her parental rights should be terminated, *other factors and circumstances impacting his/her ability to remedy the conditions of abuse and neglect* should also be considered when making such a disposition." *In re Emily*, 208 W. Va. at 342, 540 S.E.2d at 559 (footnote omitted) (some emphasis added).  Consideration of petitioner's "ability to remedy the conditions of abuse and neglect" necessarily

---

[1] In contrast to the absence of any other adjudicated allegations other than failure to protect lodged against petitioner, in *Cecil T.* the incarcerated respondent was arrested almost immediately following an improvement period, which prompted him to leave Cecil with an inappropriate caregiver. *See id.*, 228 W. Va. at 93, 717 S.E.2d at 877.  Cecil was present during the crime for which respondent was arrested and respondent left him with his mother, who had previously been found an inappropriate caregiver.  *Id*.  As such, his incarceration alone was not the sole issue underlying his adjudication as abusive and/or neglectful.

commands revisiting the specific allegations of abuse and neglect lodged against petitioner and upon which he was properly adjudicated in the first instance.[2]

The petition filed against petitioner in this matter *exclusively* alleges that he failed to protect A. F. from her mother's substance abuse—an issue which is no longer relevant as the mother's rights have been terminated. It is logically inescapable that the condition of abuse or neglect of which petitioner was adjudicated was by its very nature corrected if A. F.'s mother resolved her drug abuse or was otherwise removed as a threat to A. F.'s welfare. That has now occurred by virtue of the termination of her parental rights; A. F. remains in the custody of her grandparents, where petitioner's mere incarceration poses no apparent, immediate threat to her safety or welfare.

Further, with respect to the extraneous issues upon which the circuit court based its termination (and to which the majority alludes), none of those issues cure the circuit court's error or justify termination, as presented. Irrespective of the majority's

---

[2] The majority insinuates that incarceration is tantamount to abandonment and therefore deserving of termination, citing a concurring opinion by Justice Workman. *See In re A. P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019) (Workman, J., concurring) (stating that by reading the statutory provisions in pari materia, "an incarcerated parent can be adjudicated as having abandoned his or her child[ren] through evidence of the parent's inability to meet even the most minimal parental duties and responsibilities to the child[ren]."). Critically, however, petitioner was not alleged to have abandoned A. F. in the subject petition, whereas in *A. P.-1*, abandonment was specifically alleged against the respondent parent. *See id*. at 698, 827 S.E.2d at 840 ("[T]he petition here alleged both abandonment and abuse/neglect."). The DHHR did not seek amendment of the petition herein to allege abandonment at any time. *See* discussion *infra*.

highlighting of petitioner's criminal history, it is undisputed that 1) his convictions occurred prior to A. F.'s birth; and 2) his criminal history was not made part of the petition upon which he was adjudicated. Similarly, the circuit court's focus on petitioner's rights as pertained to other children not named in the petition had no adequate basis in the record; the evidence on this is, at best, vague and primarily consists of illusory statements by the prosecutor and petitioner's attorneys. More importantly, the prosecutor explicitly recognized that if the Department of Health and Human Resources ("DHHR") intended to rely on prior involuntary termination as a basis to terminate in the instant case, amendment of the petition was necessary. During the dispositional hearing below, the prosecutor twice referenced amending the complaint to include allegations of prior termination, but never sought to do so due to the circuit court's erroneous termination. *See* W. Va. Code § 49-4-604(c)(7)(C) (stating that prior involuntary termination may constitute "aggravated circumstances," obviating the need for efforts at reunification).

This Court has definitively rejected attempts to base disposition on allegations that are invoked during disposition, but which were not alleged in the petition or any amendment and which did not form the basis of adjudication. *See In re Lilith H.*, 231 W. Va. 170, 181, 744 S.E.2d 280, 291 (2013) ("The circuit court then terminated their parental rights on the basis of their continued acrimony, which was never even alleged to constitute abuse and/or neglect in the petition or at any time during the proceedings. This action served to "'back door'" adjudication."). Neither our Rules of Procedure, our

7

precedent, nor due process permit termination of parental rights on a basis against which a respondent parent was not given an opportunity to defend. [3]

Accordingly, while I concur in the majority's determination that the circuit court erred in failing to consider the *Cecil T.* factors, I respectfully dissent to its affirmation of termination of petitioner's parental rights on the basis of evidence which was not of record below, thereby preventing petitioner from arguing the impact of such evidence to the circuit court. There is simply nothing in the record before this Court which adequately salvages the circuit court's otherwise erroneous dispositional order terminating petitioner's parental rights. I do not suggest, however, that upon consideration of the fully developed record and the *Cecil T.* factors that the circuit court may not properly determine that termination of petitioner's rights is in A. F.'s best interests. Quite to the contrary, my position is that this determination remains within the exclusive province of the circuit court

---

[3] Further demonstrating the prematurity of termination at this juncture, petitioner was implicitly denied an improvement period despite his undisputed willingness to participate because the circuit court had improperly concluded that termination was proper. Having found the circuit court's analysis which gave rise to termination to be erroneous, it is necessary to remand to permit the circuit court to give full and proper consideration to whether an improvement period is in order.

DHHR and the guardian ad litem take the position petitioner did not qualify for an improvement period because he failed in his burden to demonstrate the availability of remote or online services. However, the statutory language upon which they rely makes it petitioner's burden to demonstrate he "is likely to *fully participate* in the improvement period[.]" W. Va. Code § 49-4-610 (2015) (emphasis added). Nothing in the statutory language makes it incumbent upon a petitioner to establish the *availability* of particular services or means of providing such services. DHHR's willful ignorance about the availability of services is wholly insufficient to establish that petitioner is not likely to fully participate in an improvement period.

8

in the first instance upon assessment of the facts and arguments of the parties, properly guided by applicable law, rather than a majority of this Court.