**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.D.-1**

**No. 25-230** (Nicholas County CC-34-2024-JA-106)

## MEMORANDUM DECISION

Petitioner Father R.D.-2[1] appeals the Circuit Court of Nicholas County's March 10, 2025, order terminating his parental and custodial rights, arguing that the circuit court erred in failing to apply a less restrictive disposition and in concluding that termination was necessary for the child's welfare.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in November 2024 alleging that the petitioner and the mother had failed to provide safe and suitable housing for the child, as the mother's camper was in deplorable condition and the petitioner was incarcerated with an anticipated release date in June 2028. The DHS also alleged that the petitioner had failed to support the child financially. Specifically, the DHS alleged that the petitioner was in arrears on child support payments prior to his incarceration.

At an adjudicatory hearing in December 2024, the petitioner stipulated to the petition's allegations. On this basis, the circuit court adjudicated the petitioner as an abusive and neglectful parent and R.D.-1 as an abused and neglected child. The petitioner moved for a post-adjudicatory improvement period, which the court denied at a hearing in January 2025. In February 2025, the guardian submitted her report to the court, noting that the petitioner lacked a relationship with R.D.-1 as the two had not been in contact for approximately ten years. The guardian stated that the then-fourteen-year-old child "barely kn[ew] [the petitioner]" and "ha[d] no wishes or feelings regarding [the petitioner's] parental rights."

At the February 2025 dispositional hearing, the petitioner testified that he had been incarcerated since 2019 due to convictions for grand larceny, burglary, and conspiracy but

---

[1] The petitioner appears by counsel Juliana C. Dotsenko. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Counsel Denise N. Pettijohn appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because the child and the petitioner share the same initials, we refer to them as R.D.-1 and R.D.-2, respectively.

maintained that his expected release date was "not far off."[3] The petitioner admitted that he had not been involved in R.D.-1's life since the child's "first two to three years," at which time the petitioner and the mother separated and divorced. The petitioner attributed his subsequent absence to the fact that he needed "time to get over [the divorce]" and claimed that he was arrested and incarcerated just as he was "planning to start being in [the child's] life again." The petitioner admitted to exercising no visitation with the child after the divorce, averring that this was not due to any interference by the mother. Though the petitioner had spoken to the mother "a couple of times" since his arrest "to ask about [R.D.-1]," he had not spoken to the child. The petitioner stated that he subsequently lost contact as the mother's phone number had changed. The petitioner testified that he last provided financial support to the child "shortly before [he] got arrested," but acknowledged that he was unemployed and in arrears on child support when he was taken into custody. He stated that, on one occasion, he attempted to send the child a gift but did not think he had the correct address. The petitioner was unsure of the child's current age, believing him to be "ten or eleven" years old. Both the DHS and the guardian recommended termination. The guardian specifically noted that the petitioner had currently served six years of his two-to-fifteen-year sentence, and that if the petitioner were to remain incarcerated for his maximum sentence, the child would reach the age of majority before his release.

Based on this evidence, the circuit court terminated the petitioner's parental and custodial rights to R.D.-1.[4] The court found that the petitioner and the child had no bond as the petitioner's own testimony indicated that he had not supported, spoken to, or visited the child for more than ten years and did not even know how old the child was. The court also found that the petitioner was in arrears on child support payments at the time of his arrest and had been incarcerated for the past six years. The court therefore concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, as the petitioner's actions—both before and after his incarceration—demonstrated his settled purpose to forego his parental duties and parental responsibilities. The court further found that, per the guardian's report, termination was in the child's best interest. Having "considered the alternative[] dispositions set forth in West Virginia Code § 49-4-604," the court "conclude[d] that there [was] no alternative to . . . termination." The petitioner now appeals this dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner asserts that the circuit court erred in terminating his rights instead of utilizing a less restrictive disposition. However, it is well established that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be

---

[3] At the January 2025 hearing, the petitioner's counsel proffered that he had completed courses for accelerated release and had a parole hearing scheduled for June 2025, but did not have a "home plan" for where he would reside upon release.

[4] The child remains in the legal custody of the DHS but is in the physical custody of the mother, who is participating in a post-adjudicatory improvement period. The permanency plan for the child is reunification with the mother with a concurrent plan of adoption.

substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)); *see also* W. Va. Code § 49-4-604(c). Pursuant to West Virginia Code § 49-4-604(d), there is "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" when "based upon the evidence before the court, the abusing adult . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The court found that the petitioner had decided to forgo his parental duties and responsibilities, as the petitioner himself testified that he had not attempted to speak to or visit the child in at least ten years, including several years when he was not yet incarcerated, and was in arrears on child support payments at the time of his arrest. It is undisputed that the petitioner failed to provide for the child, and given his continued incarceration, he was unable to participate in services to address this neglect.[5] The court also heard evidence suggesting that even if the petitioner were to be released before the child reached the age of majority that his likelihood of building a relationship with and providing for the child was speculative given the petitioner's voluntary absence from the child's life before his incarceration. As such, there was no reasonable likelihood that the conditions of neglect could be substantially corrected, and we conclude that the circuit court was not required to employ a less restrictive dispositional alternative to termination.

Next, the petitioner asserts that the circuit court erred because the record did not demonstrate that termination was necessary for the child's welfare. In support, the petitioner argues that a parent "does not forfeit his . . . right to the custody of the child merely by reason of having been convicted of one or more criminal offenses." Syl. Pt. 2, *State ex rel. Acton v. Flowers*, 154 W. Va. 209, 174 S.E.2d 742 (1970). However, "the right of the natural parent to the custody of minor children is not absolute and may be limited or terminated by the State . . . if the parent is proved unfit." Syl. Pt. 5, in part, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). The petitioner's argument therefore lacks merit, as he did not lose custody solely because of his convictions or incarceration but because of his adjudication as an abusive and neglectful parent, based upon his admission that he failed to provide for the child. As discussed more fully above, the court concluded that the petitioner was unable to remedy these conditions, also noting that the two had no bond. While the petitioner paradoxically asserts that termination is contrary to R.D.-1's best interests as it denies the child a father figure and a father's support, it is the petitioner himself who deprived R.D.-1 of the benefit of these parental responsibilities due to his prolonged—and, for a time, completely voluntary—absence. Lastly, the petitioner argues that there was no need to terminate his rights for the sake of permanency because the child was placed with the mother. We do not agree. As we have explained, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the other parent to retain [his] parental rights if [his] conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). As ample evidence supported the court's finding that termination was in the child's best

---

[5] We have previously held that "a parent's absence from a child's life because of incarceration that results in the inability of the parent to provide necessary food, clothing, shelter, medical care, education, or supervision is a form of neglect under the definition of a 'neglected child' set forth in West Virginia Code § 49-1-201." Syl. Pt. 3, *In re B.P.*, 249 W. Va. 274, 895 S.E.2d 129 (2023).

interest, we find that the court did not err in terminating the petitioner's parental and custodial rights. *See* W. Va. Code § 49-4-604(c) (permitting a circuit court to terminate a parent's rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the child").[6]

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 10, 2025, order is affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[6] The petitioner also asserts, in passing, that the DHS failed to provide him with services. However, at the January 2025 hearing regarding the petitioner's motion for an improvement period, the DHS and the guardian each proffered that the petitioner was unable to participate in services due to his incarceration, an assertion the petitioner did not contest. As such, the petitioner is not entitled to relief.

4